IN the MATTER OF the GUARDIANSHIP OF: AGNES T.,
alleged incompetent.

AGNES T. and Patricia M. Cavey, Guardian ad Litem
for Agnes T., Appellants,

v.

MILWAUKEE COUNTY, Respondent.†

Court of Appeals

*No. 92–1056. Submitted on briefs March 4, 1993.—Decided
September 21, 1993.*

(Also reported in 507 N.W.2d 373.)

†Petition to review granted.

For the appellants the cause was submitted on the briefs of *Patricia M. Cavey* of the *Legal Aid Society of Milwaukee, Inc.*, of Milwaukee.

For the respondent the cause was submitted on the briefs of *Louis Edward Elder*, principal assistant corporation counsel, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. Agnes T., by her guardian ad litem, Patricia M. Cavey, appeals from a judgment appointing a limited guardian for Agnes T. due to her incompetency.[1] The issue on appeal is whether the

---

[1] Pursuant to sec. 880.33(3), Stats., the court ordered limited guardianship so that Agnes T. could retain her right to vote

trial court may order a guardianship under chapter 880 for a resident of a nursing home absent a concomitant order for protective placement under chapter 55. We hold that it may not.

The facts of this case are undisputed. Milwaukee County filed a petition for guardianship for Agnes in 1990. Agnes was, and presumably still is, a resident of Bel Aire Health Care Center, a nursing home located in Milwaukee County, and has been a resident of that facility since her voluntary admission in 1974. At the petition hearing, all parties agreed that Agnes was incompetent and in need of a guardian under sec. 880.33, Stats. Nonetheless, both by her written report and at the hearing, the guardian ad litem objected to the petition for guardianship as filed by the Department. The guardian ad litem's sole complaint was that, because Agnes was a nursing home resident, the court could not appoint a guardian for Agnes unless it also ordered protective placement under chapter 55. The guardian ad litem recommended that the trial court either dismiss the petition, or alternatively, allow the County to amend its petition to include a petition for protective placement.

The trial court granted the County's petition for guardianship of Agnes, but denied the objection of the guardian ad litem, concluding that the court did not have "jurisdiction with regard to protective placement."[2] The guardian ad litem appeals from that

in elections. Because Agnes T. had negligible assets and income, the petition sought no guardian for the estate. *See* sec. 880.04 (2), Stats.

[2] Subject-matter jurisdiction is conferred by the constitution and statutes, here Chapter 55, Stats., and relates to the power of a court to adjudicate an issue. Competency pertains to the court's power to exercise its subject-matter jurisdiction. *Vil-*

decision, arguing that the trial court has created a situation which is contrary to the law of this state. We agree.

Section 880.33, Stats., governs the appointment of guardians for persons who, like Agnes T., are incompetent. The guardian ad litem correctly points out that while Chapter 880 provides the mechanism through which individuals are provided guardians, other statutes are necessarily implicated when dealing with persons with developmental disabilities and mental illness, namely, in the case of Agnes T., Chapter 55.

Chapter 55 of the Wisconsin Statutes, entitled "Protective Service System," establishes a system to provide protective services to those individuals who, for a variety of reasons, including chronic mental illness, mental retardation, developments disabilities, and the infirmities of aging,[3] are in need of services but are not candidates for rehabilitation and treatment.[4]*See* sec. 55.001, Stats. Chapter 55 also provides for protective placement, which is defined as "placement of a ward for the primary purpose of providing care and custody." Section 55.06(1), Stats.[5]

---

*lage of Shorewood v. Steinberg,* 174 Wis. 2d 191, 199-200, 496 N.W.2d 57, 60 (1993). We construe the trial court's conclusion to mean that it lacked competency to act.

[3] The parties do not dispute that Agnes T. suffers from organic brain damage, which is an infirmity of aging. *See* sec. 55.01(3), Stats.

[4] Chapter 51, in contrast, establishes a system which provides treatment and rehabilitative care to individuals in need of such services.

[5] County departments, agencies, the guardian or any interested person can petition the circuit court for protective placement of an individual who: (1) has a "primary need for residential care and custody"; (2) has been determined to be incompetent by a circuit court; (3) "[a]s a result of developmen-

Chapters 55 and 880 both contain statutes relevant to the issue presented in this case. Section 55.05(5), Stats., provides:

> (b) 1.   Guardians of persons who have been found incompetent under s. 880.33 may consent to admission to a foster home, group home or community-based residential facility . . . without a protective placement under s. 55.06 if the home or facility is licensed for fewer than 16 beds. Prior to providing that consent, and annually thereafter, the guardian shall review the ward's right to the least restrictive residential environment and consent only to admission to a home or facility that implements those rights.
>
> 2.   Guardians of persons who have been found incompetent under s. 880.33 may consent to admission to a nursing home if the person is admitted directly from a hospital inpatient unit for recuperative care for a period not to exceed 3 months, unless the hospital admission was for psychiatric care. Prior to providing that consent, the guardian shall review the ward's right to the least restrictive residential environment and consent only to admission to a nursing home that implements those rights. Following the 3-month period, a placement proceeding under s. 55.06 is required.

Section 55.06(1)(d), Stats., provides:

> No guardian or temporary guardian may make a permanent protective placement of his or her ward

tal disabilities, infirmities of aging, chronic mental illness or other like incapacities, is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to oneself or others"; and (4) "[h]as a disability which is permanent or likely to be permanent." Section 55.06(2), Stats.

unless ordered by a court under this section but may admit a ward to certain residential facilities under s. 55.05 (5) or make an emergency protective placement under s. 55.06 (11).

Similarly sec. 880.38(1), Stats., provides, in part:

A guardian of the person of an incompetent . . . may not make a permanent protective placement of the ward unless ordered by a court under s. 55.06 but may admit a ward to certain residential facilities under s. 55.05 (5) or make an emergency protective placement . . . .

In 1974, Agnes T. voluntarily entered the nursing home where she presently resides.[6] Recently, the court appointed a guardian for Agnes. The guardian ad litem argues that this appointment has presented the following problem. Because Agnes has been found incompetent, she is no longer able to consent to her placement in a nursing home. The only person able to consent to Agnes' placement in the nursing home is her newly-appointed guardian. Because the nursing home contains more than 16 beds, however, the applicable statutes do not allow the guardian to consent to such a placement without court-ordered protective placement under sec. 55.06, Stats. Thus, the guardian ad litem argues, that by denying her objection to guardianship without an order for protective placement under sec. 55.06, the trial court erred, and created an illegal placement for Agnes T.

---

[6] An individual who is "legally and actually capable of consenting" can voluntarily enter a group home, foster home, community-based residential facility, adult family home, or nursing home without court intervention. *See* sec. 55.05(5)(a), Stats.

In response, the County argues that the relevant statutes only prohibit a guardian from *admitting* a ward to a nursing home. Thus, the County reasons, because Agnes was already a resident of the facility at the time she was adjudicated to be incompetent, her guardian was not required to *admit* her, and the placement does not present a problem.

■

It is true that the relevant statutes do not explicitly prohibit a guardian from merely allowing a ward to remain in a large facility that the ward voluntarily entered before becoming incompetent. *See* secs. 55.05(5)(b) and 55.06(1)(d), Stats. The statutes, however, do not explicitly permit the guardian to do so, either. Because the statutes are silent on the issue, we consider related statutory sections in an attempt to interpret secs. 55.05(5)(b) and 55.06(1)(d), Stats. *See Plachta v. Plachta*, 118 Wis. 2d 329, 332, 348 N.W.2d 193, 195 (Ct. App. 1984). Statutory interpretation presents a question of law that we review without deference to the conclusion of the trial court. *Id.*

■

We hold that the relevant statutes apply not only in a situation where a guardian must admit a ward to a facility, but also where a newly appointed guardian must consent to the continued placement of a current nursing home resident. Because the statutes do not allow a guardian to consent to a nursing home placement without a court order, the trial court erred in ordering only guardianship for Agnes T.

The stated policy of chapter 55 is to provide protective services to "all persons when in need of them, and to place the least possible restriction on personal liberty and exercise of constitutional rights consistent with due process and protection from abuse, exploita-

tion and neglect." Section 55.001, Stats. Further, "[t]he protective service system shall be designed to encourage independent living and to avoid protective placement whenever possible." Section 55.02, Stats. Consistent with that policy, the legislature has enacted requirements to be met whenever protective placement is sought. "Before ordering the protective placement of any individual, the court shall direct a comprehensive evaluation of the person in need of placement . . . ." Section 55.06(8), Stats. Based upon that evaluation, the trial court must order placement "be made in the least restrictive environment consistent with the needs of the person to be placed." Section 55.06(9)(a), Stats.

Crucial to our holding is the fact that the statutes guarantee protectively placed individuals an annual review to ensure that the placement remains as minimally restrictive as possible. Section 55.06(10), Stats.[7] The court must appoint a guardian ad litem to review the annual report with the ward. *State ex rel. Watts v. Combined Community Services Bd.*, 122 Wis. 2d 65, 84, 362 N.W.2d 104, 113 (1985). The guardian ad litem must make a report to the court detailing:

---

[7] Section 55.06(10)(a), Stats., provides:

(a)   The department or any agency which is responsible for a protective placement shall review the status of each person placed at least once every 12 months from the date of admission. The court in its order of placement may, however, require that such review be conducted more frequently. The review shall include in writing an evaluation of the physical, mental and social condition of each such person, and shall be made a part of the permanent record of such person. The review shall include recommendations for discharge or placement in services which place less restrictions on personal freedom, where appropriate. The results of the review shall be furnished to the department in such form as the department may require and shall be furnished to the court that ordered the placement and to the person's guardian.

> [W]hether the individual continues to meet the standards for protective placement, whether the current placement is the least restrictive environment consistent with the individual's needs, whether the individual or guardian requests a change in status or placement, whether counsel should be appointed, and whether a full due process hearing should be held.

*Id.* at 84-85, 362 N.W.2d at 113. Regardless of whether a full due process hearing is or is not required, a judicial officer must review the annual report. *Id.* at 84, 362 N.W.2d at 113.

While it is clear that one goal of chapter 55 is to ensure that a ward is initially placed in the least restrictive environment as necessary, an equally important goal is to ensure that the individuals do not remain institutionalized if a less restrictive alternative is possible. The obvious intent of the yearly court intervention is to provide a safeguard for incompetent individuals, particularly those individuals residing in large facilities such as nursing homes. The legislature's concern for those individuals is evidenced by the fact that a guardian cannot consent to a ward's placement in such a facility absent a court order for protective placement.

Despite that legislative intent, the County would have us hold that the statutory protections provided in sec. 55.06, Stats., protects some, but not all, incompetent institutionalized individuals. The County's interpretation of the relevant statutes, in essence, proposes a system in which there are two distinct classes of incompetent individuals in large residential facilities—those individuals who entered the facility *before* becoming incompetent, having entered the facility of their own volition, and those individuals who entered

the facility *after* becoming incompetent, having been admitted upon a court-ordered protective placement. Under the County's interpretation of the statutes, the law would treat these two groups differently.

Nothing in Chapters 55 or 880, however, would lead this court to conclude that the legislature intended disparate treatment of these two groups of individuals. In both cases, the incompetent individuals are incapable of consenting to their continued placement and would be dependent upon the consent of a guardian. The legislative intent to protect incompetent individuals from the unnecessary restrictions of placement in large facilities applies equally to both groups.

We conclude that the legislature intended secs. 55.05(5)(b), 55.06(1)(d), and 880.38(1), Stats., to apply to guardians of individuals who become incompetent after voluntarily entering a nursing home. Thus, a guardian cannot consent to the continued residence of such an individual in a nursing home, or other facility licensed for 16 or more beds, without a court-ordered protective placement. A court-ordered guardianship of such an individual, without a concomitant order for protective placement, creates an illegal placement and constitutes an erroneous exercise of discretion.

Agnes T., as an incompetent individual residing in a nursing home, is entitled to the protections afforded by sec. 55.06, Stats., whereby the trial court must determine whether Agnes is in need of protective placement, and if so, whether the current residential arrangement is the least restrictive environment consistent with her needs.

Accordingly, we reverse the judgment appointing a limited guardian for Agnes T. and remand to the trial court for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.

FINE, J. (*dissenting*). The majority opinion's conclusion that the protective-placement provisions of section 55.06, Stats., apply to a person who has *not* been protectively-placed is not supported by either the statutes or the cases. I must, therefore, respectfully dissent.

Agnes T. is not being "protectively placed"—nor is she being "admitted" to *any* facility; she is continuing to live where she has lived *voluntarily* for almost twenty years. Unlike someone who has been committed involuntarily under chapter 55, she is as free to leave the nursing home today as she was before the guardian was appointed. The appointment of the guardian does not change this simple fact. Indeed, section 880.33(7), Stats., *specifically* recognizes the distinction between the appointment of a guardian for an incompetent person and the protective placement of that person:

> A finding of incompetency and appointment of a guardian under this subchapter is not grounds for involuntary protective placement. Such placement may be made only in accordance with s. 55.06.

Thus, if Agnes T. should, contrary to what others believe is her own best interest, attempt to leave the facility, protective-placement procedures can be started, subject to all of the appropriately-required protections. Mere continuation of Agnes T.'s voluntarily-assumed living arrangements, however, is not warrant for imposition of procedures deemed unnecessary by the legislature. In fact, the majority remands this matter for a determination of whether Agnes T. is in need

of protective placement. If the answer is "yes," presumably she will be "placed" where she currently lives. If the answer is "no," presumably she will be permitted to continue to live where she currently lives. In any event, annual review of her living arrangements and whether they are "the least restrictive" is currently required by section 880.38(3), Stats.

The legislature has determined the level of protection needed by persons in Agnes T.'s position. A review of a finding of incompetency and of the need for guardianship may be had under section 880.34(4), Stats.:

> A ward who is 18 years of age or older, any interested person acting on his behalf, or his guardian may petition for a review of incompetency. Upon such a petition for review, the court shall conduct a hearing at which the ward shall be present and shall have the right to a jury trial, if demanded. The ward shall also have the right to counsel and the court shall appoint counsel if he is unable to obtain counsel. If the ward is indigent, counsel shall be provided at the expense of his county of legal settlement.

As noted, annual review is required by section 880.38(3), Stats., when, as with Agnes T., a guardian of the person has been appointed:

> A guardian of the person of an incompetent appointed under s. 880.33 shall make an annual report on the condition of the ward to the court that ordered the guardianship and to the county department designated under s. 55.02. That county department shall develop reporting requirements for the guardian of the person. The report shall include, but not be limited to, the location of the ward, the health condition of the ward, any recommendations regarding the ward and a statement of

374

whether or not the ward is living in the least restrictive environment consistent with the needs of the ward. The guardian may fulfill the requirement under this subsection by submitting the report required under s. 55.06 (10).

Absent an involuntary commitment under chapter 55, *State ex rel. Watts v. Combined Community Services Bd.*, 122 Wis. 2d 65, 362 N.W.2d 104 (1985), the *sole* case-authority relied upon by the majority, does not apply here. We are judges, not legislators; we should keep within the limits of our rightful authority. As Sir Francis Bacon cogently observed centuries ago in his essay *Of Judicature*, we must remember that our "office is *jus dicere*, and not *jus dare*; to interpret law, and not to make law, or give law."