IN the MATTER OF the GUARDIANSHIP OF AGNES T.,
Alleged Incompetent.

AGNES T. and Patricia M. Cavey, Guardian ad Litem
for Agnes T., Appellants,

v.

MILWAUKEE COUNTY, Respondent-Petitioner.

Supreme Court

*No. 92–1056. Oral argument November 8, 1994.—Decided
January 18, 1995.*

(Also reported in 525 N.W.2d 268.)

For the respondent-petitioner there were briefs and oral argument by *Louis Edward Elder,* principal assistant corporation counsel, Milwaukee.

For the appellants there was a brief by *Patricia M. Cavey* and *Legal Aid Society of Milwaukee, Inc.,* Milwaukee and oral argument by *Patricia M. Cavey.*

STEINMETZ, J. The issue in this case is whether a circuit court may appoint a guardian under ch. 880, Stats., for an incompetent resident of a nursing home licensed for 16 or more beds without holding a hearing for protective placement under ch. 55. The circuit court appointed a guardian for such a person but

refused to hold a hearing for protective placement under ch. 55. The court of appeals reversed, holding that the appointment of a guardian for such a person without a concomitant order for protective placement creates an illegal placement and, thus, constitutes an erroneous exercise of discretion. We affirm the court of appeals' decision insofar as it requires protective placement before a guardian may consent to the continued residence of an incompetent person in a nursing home licensed for 16 or more beds, and insofar as it requires the circuit court to hold a protective placement hearing whenever it appoints a guardian for an incompetent person who resides in a nursing home licensed for 16 or more beds.

Since her voluntary admission in 1974, Agnes T. has been a continuous resident of Bel Aire Health Care Center, a nursing home licensed for more than 16 beds and located in Milwaukee county. In November 1990, Milwaukee county petitioned the circuit court, the Honorable John F. Foley, to appoint a guardian for Agnes T.'s person[1] on the ground of incompetency. Pursuant to sec. 880.331(1), Stats.,[2] the court appointed the Legal Aid Society of Milwaukee, Inc. to serve as

---

[1] Because Agnes T. has negligible assets and income, the county's petition did not request a guardian for Agnes T.'s estate under sec. 880.04(3), Stats.

[2] Section 880.331(1), Stats., provides:

**Guardian ad litem in incompetency cases. (1)** Appointment. The court shall appoint a guardian ad litem whenever it is proposed that the court appoint a guardian on the ground of incompetency under s. 880.33, protectively place a person or order protective services under s. 55.06, review any protective placement or protective service order under s. 55.06 or terminate a protective placement under s. 55.06.

Agnes T.'s guardian ad litem (GAL). The court also ordered a psychological examination of Agnes T.[3]

In December 1990, Dr. Nicholas Claditis, a licensed psychologist, examined Agnes T. and concluded that she was incompetent.[4] At the petition hearing, the parties stipulated that Agnes T. was incompetent and in need of a guardian under sec. 880.33, Stats.[5] The GAL, however, objected to the county's petition for guardianship, because it did not include a petition for protective placement. The GAL argued that because Agnes T. was in a facility licensed for 16 or more beds, the court could not appoint a guardian for her without ordering protective placement under ch. 55.

The circuit court denied the GAL's objection, concluding that it lacked authority to order protective placement because no petition for protective placement was before the court. The court subsequently issued an order appointing a limited guardian for Agnes T.[6] The GAL appealed, arguing that the court's order created

---

[3] Section 880.33(1), Stats., provides that "[w]henever it is proposed to appoint a guardian on the ground of incompetency, a licensed physician or licensed psychologist, or both, shall furnish a written statement concerning the mental condition of the proposed ward, based upon examination."

[4] Section 880.01(4), Stats., defines "incompetent" to mean "a person adjudged by a court of record to be substantially incapable of managing his property or taking care of himself by reason of infirmities of aging, developmental disabilities, or other like incapacities."

[5] The parties also agree that Agnes T. suffers from schizophrenia and from "organic brain damage." The latter is an "infirmity of aging" under sec. 55.01(3), Stats.

[6] The court ordered a limited guardianship under sec. 880.33(3), Stats., so that Agnes T. could retain her right to vote in elections.

an illegal placement by allowing Agnes T. to remain in a facility licensed for 16 or more beds without a court order for protective placement.

In a published opinion, the court of appeals reversed the order of the circuit court. *In Matter of Guardianship of Agnes T.*, 179 Wis. 2d 363, 507 N.W.2d 373 (Ct. App. 1993). The court opined that once Agnes T. was found incompetent, she was no longer able to consent to her continued residence in the nursing home. *Id.* at 368. According to the court, Agnes T.'s guardian was also unable to consent to her continued residence in the nursing home in which she was located, because absent a court order for protective placement, sec. 55.05(5), Stats., does not permit a guardian to consent to the continued residence of a ward in a facility licensed for 16 or more beds. *See id.* at 368–69. Thus, the court concluded, by appointing a guardian without a concomitant order for protective placement, the circuit court created an illegal placement and erroneously exercised its discretion. *Id.* at 372. Milwaukee county petitioned this court for review, which was granted.

As stated above, the issue in this case is whether a circuit court may appoint a guardian under ch. 880, Stats., for an incompetent resident of a facility licensed for 16 or more beds without holding a hearing for protective placement under ch. 55. This is an issue of statutory interpretation. The interpretation of a statute is a question of law, which we review without deference to the lower courts. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

Chapter 880, Stats., governs the appointment of guardians for adults who are found incompetent. Chap-

ter 55 seeks to provide protective services to those individuals who are in need of such services and to protect such individuals from abuse. The two chapters are intertwined by their express language, and both contain statutes that are necessarily implicated in resolving the issue presented.

Section 880.33(7), Stats., provides that "[a] finding of incompetency and appointment of a guardian under this subchapter is not grounds for involuntary protective placement. Such placement may be made only in accordance with s. 55.06." Thus, a circuit court may not order protective placement of a person simply because the court finds the person incompetent and appoints a guardian. Rather, the court must hold a hearing to determine whether the ward should be protectively placed. Protective placement must always be made in accordance with sec. 55.06.

Section 55.06(1)(d), Stats., provides in part:

> No guardian . . . may make a permanent protective placement of his or her ward unless ordered by a court under this section but may admit a ward to certain residential facilities under s. 55.05(5) or make an emergency protective placement under 55.06(11).

Similarly, sec. 880.38(1), Stats., provides in part:

> A guardian of the person of an incompetent . . . may not make a permanent protective placement of the ward unless ordered by a court under s. 55.06 but may admit a ward to certain residential facilities under s. 55.05(5) or make an emergency protective placement under s. 55.06(11).

Under sec. 55.05(5)(b), Stats., the guardian of a ward who is incompetent but who has not been protectively placed may consent to the ward's admission to a

facility that is licensed for fewer than 16 beds. The guardian of such a ward may not consent to the ward's admission to a larger facility. The statute provides:

> (b) 1. Guardians of persons who have been found incompetent under s. 880.33 may consent to admission to a foster home, group home or community-based residential facility, as defined under s. 50.01(1g), without a protective placement under s. 55.06 if the home or facility is licensed for fewer than 16 beds. Prior to providing that consent, and annually thereafter, the guardian shall review the ward's right to the least restrictive residential environment and consent only to admission to a home or facility that implements those rights.
>
> 2. Guardians of persons who have been found incompetent under s. 880.33 may consent to admission to a nursing home if the person is admitted directly from a hospital inpatient unit for recuperative care for a period not to exceed 3 months, unless the hospital admission was for psychiatric care. Prior to providing that consent, the guardian shall review the ward's right to the least restrictive residential environment and consent only to admission to a nursing home that implements those rights. Following the 3-month period, a placement proceeding under s. 55.06 is required.

The county acknowledges that these statutory provisions prohibit a guardian from consenting to the "admission" of a ward to a nursing home licensed for 16 or more beds. The county also acknowledges that an incompetent individual is legally incapable of consenting to his or her admission to such a nursing home. However, the county contends that the statutes do not prohibit a guardian from consenting to a ward's continued residence in such a nursing home, if the ward

previously admitted herself to the nursing home as did Agnes T. We disagree with the county's interpretation of the statutes and now hold that absent a court order for protective placement, sec. 55.05(5), Stats., does not permit a guardian to consent to the continued residence of a ward in a facility licensed for 16 or more beds.

Chapters 880 and 55, Stats., evidence a clear legislative attempt to protect incompetent individuals whose decisions about where and how to live are not their own. Specifically, ch. 55 seeks to guarantee an incompetent individual's right to the least restrictive living environment by ensuring that the individual does not remain institutionalized if a less restrictive alternative is available. *See* sec. 55.001. The statute accomplishes this goal by requiring an annual review of each incompetent individual's living arrangement.

Section 55.06(10), Stats., entitles a ward who is protectively placed to an annual judicial review of the placement. *See St. ex rel. Watts v. Combined Community Services,* 122 Wis. 2d 65, 84, 362 N.W.2d 104, 113 (1985).[7] Similarly, sec. 55.05(5)(b)1 requires guardians to annually review the living arrangement imposed upon a ward who is not protectively placed, but whose

---

[7] Under *Watts,* the court must appoint a guardian ad litem to discuss the annual review of the protective placement with the ward and to make a report to the court regarding the following:

> [W]hether the individual continues to meet the standards for protective placement, whether the current placement is the least restrictive environment consistent with the individual's needs, whether the individual or guardian requests a change in status or placement, whether counsel should be appointed, and whether a full due process hearing should be held.

*Watts,* 122 Wis. 2d at 84–85.

decision to live in a facility licensed for less than 16 beds is not his or her own.

The county's proposed interpretation of the statute would create a situation in which a ward could be involuntarily held in a nursing home licensed for 16 or more beds without an order for protective placement. In effect, the ward would be protectively placed, but would not receive the statutory protections that accompany protective placement. This result would contravene the plain language of sec. 55.05(5)(b), Stats., and the legislature's clear intent to protect the liberty interests of incompetent individuals whose decisions about where and how to live are not their own. Accordingly, we reject the county's proposed interpretation of the statute.

In the instant case, because Agnes T. is incompetent, she cannot legally consent to her continued residence in the nursing home. Because the nursing home is licensed for more than 16 beds, her guardian is also unable to consent to her continued residence there absent a court order for protective placement. Section 55.05(5)(b)1, Stats. Therefore, Agnes T. may not remain in the nursing home unless the circuit court orders that she be protectively placed there. An illegal placement would result if Agnes T. were allowed to remain in the nursing home without a court order for protective placement.

Through a guardian ad litem, every ward should have an opportunity to demonstrate that continued residence in a nursing home licensed for 16 or more beds is appropriate for the ward's needs. *See generally* sec. 51.001, Stats. Thus, we hold that upon appointing a guardian for a ward who is a resident of a facility

licensed for 16 or more beds, the court must conduct a concurrent protective placement hearing. At the hearing, the court must determine whether the four statutory criteria for protective placement are met. *See* sec. 55.06(2)(a)–(d).[8]

██

If the county petitions for protective placement, the burden is on the county to provide the court with clear and convincing evidence[9] that the ward meets the four statutory criteria. However, if the county does not petition for protective placement, the ward's guardian ad litem bears this burden of proof. If the criteria are

---

[8] Section 55.06(2), Stats., enumerates four criteria that must be satisfied before the court may order protective placement of a ward. That section provides:

> (2)   The department, an agency, a guardian or any interested person may petition the circuit court to provide protective placement for an individual who:
>     (a)   Has a primary need for residential care and custody;  ·
>     (b)   Except in the case of a minor who is alleged to be developmentally disabled, has either been determined to be incompetent by a circuit court or has had submitted on the minor's behalf a petition for a guardianship;
>     (c)   As a result of developmental disabilities, infirmities of aging, chronic mental illness or other like incapacities, is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to oneself or others. Serious harm may be occasioned by overt acts or acts of omission; and
>     (d)   Has a disability which is permanent or likely to be permanent.

In weighing the evidence, the circuit court may consider whether moving a long-time resident of a nursing home, such as Agnes T., would create a serious risk of harm to that person. *See* sec. 55.06(2)(c).

[9] Section 55.06(7), Stats., provides that "before placement may be ordered under this chapter the court or jury must find by clear and convincing evidence that the individual to be placed is in need of placement as provided in sub. (2)."

met, the court will protectively place the ward. If the criteria are not met with respect to a ward residing in a facility licensed for 16 or more beds, the ward must be moved to a facility licensed for fewer than 16 beds.

The county has refused to petition the circuit court for the protective placement of Agnes T. We note that under the facts of this case, the county did not have a duty to file such a petition. Agnes T.'s right to appropriate treatment is safeguarded by requiring the circuit court to conduct a protective placement hearing at which her GAL will have an opportunity to demonstrate that she should be protectively placed.

In summary, we hold that absent a court order for protective placement, sec. 55.05(5), Stats., does not permit a guardian to consent to the continued residence of a ward in a facility licensed for 16 or more beds. We also hold that upon appointing a guardian, the court shall hold a protective placement hearing. If the county does not petition for protective placement, the burden is on the ward's guardian ad litem to provide the court with clear and convincing evidence that the ward meets the four statutory criteria for protective placement. Accordingly, we affirm the court of appeals' decision insofar as it requires protective placement before a guardian may consent to the continued residence of an incompetent person in a nursing home licensed for 16 or more beds, and insofar as it requires the circuit court to hold a protective placement hearing whenever it appoints a guardian for such a person.

*By the Court.*—The decision of the court of appeals is affirmed.