IN the MATTER OF the GUARDIANSHIP OF JANE E.P.:

GRANT COUNTY DEPARTMENT OF SOCIAL SERVICES,
Appellant,

v.

UNIFIED BOARD OF GRANT AND IOWA COUNTIES,
Respondent.†

Court of Appeals

*No. 03–0634. Oral argument April 27, 2004.—Decided
July 1, 2004.*

2004 WI App 153

(Also reported in 687 N.W.2d 72.)

† Petition to review granted 9-16-04.

On behalf of the appellant, the cause was submitted on the briefs of *Sheila Stuart Kelley* of *Kopp, McKichan, Geyer, Skemp & Stombaugh, LLP*, Platteville. There was oral argument by *Sheila S. Kelley*.

On behalf of the respondent, the cause was submitted on the brief of *Craig R. Day* of *Law Office of Craig R. Day*, Lancaster. There was oral argument by *Craig R. Day*.

A nonparty brief was filed by *John J. Prentice* of *Prentice & Phillips LLP*, Milwaukee, for Wisconsin Counties Association.

Before Deininger, P.J., Lundsten and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Grant County Department of Social Services appeals an order dismissing its petition for guardianship and protective placement of Jane E.P. The petition for guardianship and protective placement was dismissed upon motion by the Unified Board of Grant and Iowa Counties, alleging that the circuit court lacked competence to proceed upon the petition because Jane was not a resident of the State of Wisconsin. The County argues that pursuant to federal case law, Jane is the proper subject of a Wisconsin guardianship and the statutory residency requirements violate her right to interstate travel. We agree and reverse the order of the circuit court dismissing the guardianship petition and remand for proceedings consistent with this order.

## FACTS

¶ 2. Jane is a forty-six-year-old woman who suffers from Wernicke's encephalopathy. Due to her condition, Jane is unable to handle her finances and property and is unable to meet her basic needs. She is currently a resident of the Galena Nursing Home in Galena, Illinois, placed there pursuant to a guardianship in the state of Illinois. Her guardian is her sister, Deborah V.

¶ 3. Many of Jane's family members are residents of southern Grant County, Wisconsin; these family members want Jane to reside at the Southwest Health Center Nursing Home in Grant County, Cuba City, Wisconsin, a privately-owned facility. Through the office of Grant County Corporation Counsel, Deborah V. filed a petition for guardianship and protective placement in Grant County. The petition nominated Deborah V. as guardian of the person and estate of Jane and sought protective placement of Jane, nominating the Cuba City facility as the proposed custodian.

¶ 4. The circuit court signed an Amended Order for Comprehensive Evaluation directed to the Unified Board, the agency responsible for performing evaluations on individuals who are the subject of guardianships due to mental illness, developmental disability and other similar incapacities.[1] The Board instead sought to have the circuit court dismiss the petition, arguing that the circuit court lacked competence to proceed because Jane was not a resident of Wisconsin. After a hearing on this motion, the circuit court granted the Board's motion and dismissed the petition for guardianship and protective placement based upon Jane's non-residency. The County appeals.

## DISCUSSION

■

¶ 5. This case addresses whether Wisconsin's protective placement statute requiring a proposed ward to reside in a Wisconsin county at the time a petition is

---

[1] The Board was created pursuant to WIS. STAT. § 51.42(3) (2001–02) to administer a community mental health, developmental disabilities, alcoholism and drug abuse program. All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

filed, Wɪs. Sᴛᴀᴛ. § 55.06(3)(c), violates the ward's constitutionally protected right to travel. The Board argues § 55.06(3)(c) is constitutional because it does not burden Jane's right to travel and because the statute is a bona fide residency requirement. Therefore, the Board argues, since Jane is not a resident of Grant County, the court lacks competence to consider the guardianship and protective placement petition filed on behalf of Jane's guardian. The Board further argues that if Jane's right to travel is burdened, the burden is justified by the potential fiscal impact counties and the State will suffer by providing services to nonresidents. The County claims these statutes impose a residency requirement that infringes on Jane's constitutional right to interstate travel and that by requiring Jane to reside in Wisconsin at the time the petition was filed, Jane's constitutional right to travel to Wisconsin with the intent on residing here was infringed. We agree with the County and resolve this dispute by addressing the constitutionality of these statutes.[2]

---

[2] The circuit court did not address the constitutional challenge presented here, noting that neither party was challenging the constitutionality of the residency requirement and that no notice had been provided to the Wisconsin Attorney General regarding a possible constitutional challenge. The Unified Board argues on appeal that because the County has not notified the Wisconsin Attorney General of the constitutional challenge to Wɪs. Sᴛᴀᴛ. § 55.06(3)(c), the County's appeal should be dismissed. Recognizing the statewide importance of the issue presented in this appeal, we provided notice to the Wisconsin Attorney General of these proceedings and afforded the Attorney General an opportunity to participate in this case. The Attorney General has chosen not to participate. Because the notice requirement to the Attorney General has now been satisfied, we address the constitutional challenge to § 55.06(3)(c).

¶ 6. We review the constitutionality of statutes de novo, without deference to the circuit court. *State v. Chvala*, 2004 WI App 53, ¶ 9, 271 Wis. 2d 115, 678 N.W.2d 880. Statutes enjoy a presumption of constitutionality and we review the statutes so as to preserve their constitutionality. *Id.* The County makes an as-applied constitutional challenge to WIS. STAT. § 55.06(3)(c). A party challenging the constitutionality of a statute as applied must demonstrate that it is unconstitutional beyond a reasonable doubt. *State v. Joseph E. G.*, 2001 WI App 29, ¶ 5, 240 Wis. 2d 481, 623 N.W.2d 137.

¶ 7. The United States Supreme Court long ago recognized that "the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974).

> For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States.

*Id.* at 630 (citation omitted). The right to travel is not ascribed to any particular constitutional provision but is a right so elementary as "to be a necessary concomitant of the stronger Union the Constitution created." *Id.* at 630–631 (citation omitted). The right to travel

686

protects the right of a citizen of one state to enter and to leave another state. *Saenz v. Roe*, 526 U.S. 489, 500 (1999).

¶ 8. To provide a context for our discussion we first examine the statutes involved in this case. WISCONSIN STAT. § 880.03 provides, in relevant part,

> The court may appoint a guardian of the person of anyone subject to guardianship who is also a resident of the county, or of a nonresident found in the county, under extraordinary circumstances requiring medical aid or the prevention of harm to his or her person or property found in the county. The court may appoint a guardian of the estate of anyone subject to guardianship, whether a resident of the state or not, if any of the estate is located within the county. Separate guardians of the person and of the estate of a ward may be appointed.

Venue for a petition for guardianship of a nonresident "shall be directed to the circuit court of the county of residence of the person subject to guardianship or of the county in which the person is physically present." WIS. STAT. § 880.05. Plainly these statutes establish that before Jane may be appointed a guardian, Jane must be a proper subject for guardianship and must be physically present in the county in which the appointing court is located.

¶ 9. WISCONSIN STAT. § 55.06(1) provides, in part, "No protective placement under this section may be ordered unless there is a determination of incompetency" in accordance with the guardianship statutes. WISCONSIN STAT. § 55.06(3)(c), the statute at issue here, provides that a protective placement petition "shall be filed in the county of residence of the person to be protected." WISCONSIN STAT. § 49.001(6) defines "residence", as that term is used in ch. 55, as follows:

> "Residence" means the voluntary concurrence of physical presence with intent to remain in a place of fixed habitation. Physical presence is prima facie evidence of intent to remain.

Thus, Jane must "reside" or be physically present in the county in which the petition for protective placement is filed with the intent to remain there.

¶ 10. These statutes affect Jane in the following way. Jane's sister, her Illinois guardian, wishes to place Jane in the Grant County facility. Because the nursing home is a facility with sixteen or more beds, the facility requires a court order protectively placing Jane there. *See Agnes T. v. Milwaukee County,* 189 Wis. 2d 520, 523, 525 N.W.2d 268 (1995). To be protectively placed at the nursing home, the circuit court must find Jane to be incompetent. However, Jane must first move to Grant County, Wisconsin before a petition for protective placement may be filed and considered by the Grant county circuit court under WIS. STAT. § 55.06(3). The result is that Jane is not permitted to move to Cuba City to live in the nursing home because she is not a resident of Grant County. We next examine more specifically how these statutes infringe upon Jane's right to travel.

¶ 11. The County argues that the residency requirement of WIS. STAT. § 55.06(3)(c) violates Jane's right to interstate travel. The County relies heavily on the analysis in *Bethesda Lutheran Homes and Services, Inc. v. Leean,* 122 F.3d 443 (7th Cir. 1997), *appeal after remand,* 154 F.3d 716, to support its argument. We recognize we are not bound by decisions by lower federal courts interpreting Wisconsin law. *Johnson v. County of Crawford,* 195 Wis. 2d 374, 383, 536 N.W.2d

167 (Ct. App. 1995). However, we may rely on the analysis by a federal court's interpretation of Wisconsin law if that analysis proves instructive. *See Baldewein Co. v. Tri-Clover, Inc.*, 2000 WI 20, ¶ 10, 233 Wis. 2d 57, 606 N.W.2d 145. Thus, although we are not bound by *Bethesda Lutheran,* we consider the analysis employed by the court to be sound and we adopt it here.

¶ 12. We first examine the analysis in *Bethesda Lutheran* before applying it to the case at hand. In *Bethesda Lutheran*, four out-of-state individuals sought admission to Bethesda Lutheran Homes, a private intermediate care facility located in Jefferson County, Watertown, Wisconsin. *Bethesda Lutheran*, 122 F.3d at 444–45. The facility offered long-term care to severely retarded individuals. *Id.* Wisconsin law required individuals seeking placement in this type of facility to first obtain a court order of protective placement under WIS. STAT. § 55.06(3)(c). *Id.* at 445. As we have noted, WIS. STAT. § 55.06(3)(c) requires the petition for protective placement to be "filed in the county of residence of the person to be protected."

¶ 13. Bethesda Lutheran Homes and the four non-resident individuals, along with other individuals not relevant to this case, sued various state and local officials pursuant to 42 U.S.C. § 1983 complaining, in part, that the residency requirement of WIS. STAT. § 55.06(3)(c) impeded their constitutional right to travel because it prevented them from relocating to the Watertown facility from their current out-of-state placement. *Bethesda Lutheran*, 122 F.3d at 444. Writing for the court, Judge Posner recognized that WIS. STAT. § 55.06(3)(c) required that "to be admitted to the Watertown facility the prospective resident must first establish his residence in a Wisconsin county. So non-

residents of Wisconsin are ineligible." *Id.* at 445. Judge Posner characterized the nonresidents' challenge as follows:

> [Their challenge] is to their being required to become residents (in the sense of domiciliaries) of the state before [undergoing the protective-placement procedure], which is to say, required to move into the state at the beginning of the process without intending to leave it. Since anyone who is approved for protective placement is by definition incapable of living outside the Watertown facility or its equivalent in restrictiveness, it is unclear where in Wisconsin the applicant for admission to the facility is supposed to live while the placement petition is being processed.

*Id.* at 446.

¶ 14. The state officials advanced several reasons justifying the residency requirement, all of which were rejected by the *Bethesda Lutheran* court. The court suggested that fiscal considerations could serve as a possible justification for the residence requirement but found that the state failed to adequately argue it. *Id.* at 447. The court then concluded that the residency requirement unjustifiably interfered with interstate travel and that the requirement was "an interference" unjustified by the state. *Id.*

¶ 15. We now apply these principles and the court's analysis in *Bethesda Lutheran* to the case at hand. This case presents a nearly identical situation as in *Bethesda Lutheran*. Jane is a nonresident of Wisconsin attempting to access a private nursing home in Grant County, Cuba City, Wisconsin. She currently receives Medicaid, which would cover her expenses at the nursing home. Jane is incompetent and is protectively placed by court order in a nursing home in

Illinois. Jane's guardian, through Grant County Social Services, filed a petition in Grant County circuit court in an effort to appoint Jane's sister as her guardian and obtain a court order protectively placing Jane in the Grant County nursing home. Like the nonresident plaintiffs in *Bethesda Lutheran,* Jane cannot live in the nursing home without a protective placement order and, under Wisconsin statutes, Jane cannot access the court to receive a protective placement order without living in a Wisconsin county first. Based on this analysis we conclude Jane's right to travel to Wisconsin to live at the Grant County nursing home has been unconstitutionally restricted.

¶ 16. The Board argues that WIS. STAT. § 55.06(3)(c) is not unconstitutional because the statute does not burden Jane's right to travel and because the statute establishes a bona fide residency requirement. The Board also argues that even if § 55.06(3)(c) unconstitutionally burdens Jane's right to travel, the burden is justified because of the potential fiscal impact individuals such as Jane may have on a local government's budget. The Board's arguments lack merit.

¶ 17. The Board argues the residency requirement of WIS. STAT. § 55.06(3)(c) is not a burden on Jane's right to travel, contending that any person may move to Wisconsin, establish residence and avail him or herself of the Wisconsin guardianship and protective placement system. For Jane, it is not that simple. As the court in *Bethesda Lutheran* said

> Since anyone who is approved for protective placement is by definition incapable of living outside the Watertown facility or its equivalent in restrictiveness, it is unclear where in Wisconsin the applicant for admission to the facility is supposed to live while the placement petition is being processed.

*Bethesda Lutheran,* 122 F.3d at 446. Jane's situation is similar to the nonresidents in *Bethesda Lutheran.* She is incompetent and by definition is incapable of living outside of a long-term care facility. Based on the definition of "residence" Jane must first move to Wisconsin and "reside" here for some uncertain period of time before a court may consider a petition filed on her behalf for protective placement. Clearly, because Jane is incompetent and cannot first move to Wisconsin and have a petition for protective placement filed on her behalf, § 55.06(3)(c), as applied to Jane, unconstitutionally burdens her right to travel.

¶ 18. The Board also argues that the protective placement residency requirement is a bona fide residency requirement, which, under *Martinez v. Bynum,* 461 U.S. 321, 327–28 (1983), is constitutionally appropriate. The Supreme Court in *Martinez* explained:

> A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents . . . . It does not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there. A bona fide residence requirement simply requires that the person *does* establish residence before demanding the services that are restricted to residents.

*Id.* at 328–29 (footnote omitted). The Supreme Court has repeatedly acknowledged the constitutionality of bona fide residency requirements that are "appropriately defined and uniformly applied." *Dunn v. Blumstein,* 405 U.S. 330, 342 n.13 (1972); *Memorial Hosp. v. Maricopa County,* 415 U.S. 250, 255 (1974).

¶ 19. In our view, WIS. STAT. § 55.06(3)(c) does not establish a bona fide residency requirement. Rather, the

statute prevents the County, and hence Jane, from presenting a guardianship and protective placement petition to the court and from having that court consider the petition simply because Jane is not a resident of a Wisconsin county. WISCONSIN STAT. § 55.06(3)(c) restricts Jane's ability to access the courts for consideration of her only means to move to Wisconsin, a petition for protective placement.

¶ 20. It may be that the legislature could constitutionally establish a bona fide residency requirement for individuals wishing to access long-term care facilities in Wisconsin at public expense. *See Jones v. Milwaukee County*, 168 Wis. 2d 892, 906, 485 N.W.2d 21 (1992) (a 60–day waiting period requirement under WIS. STAT. § 49.015 is constitutional under the equal protection clause); *Saenz*, 526 U.S. at 502 ("There may be a substantial reason for requiring the nonresident to pay more than the resident for a hunting license . . . or to enroll in the state university . . . ."). But the legislature has not done so here.

¶ 21. The Board argues that even if Jane's right to travel is restricted, the restriction is justified because of the potential fiscal impact individuals such as Jane may have on a local government's budget. The Board points to testimony by its director, presented at the evidentiary hearing before the circuit court, claiming that the Board spent over $360,000 on an individual with a similar diagnosis as Jane's. That individual developed behavioral problems while in a long-term care facility in Grant County and was eventually placed in Mendota Mental Health Institution. According to statute, the Board is required to carry the fiscal burden of persons placed in Mendota. The Board claims Jane may develop similar or other problems resulting in a placement at Mendota or another Board-funded facility.

¶ 22. The Board's justification for infringing on Jane's constitutionally protected right to travel is infirm in several ways. The Board's claim that the fiscal burden on county and state programs which fund county mental health programs is speculative and finds no basis in the record. The record is not sufficiently developed for us to make a reasonable assessment as to whether the fiscal burden on the Board is significant. The testimony presented by the Board was broad and unspecific on the extent of any possible fiscal impact to be suffered by the Board by placing Jane or other nonresidents in Wisconsin nursing home facilities. Moreover, the undisputed evidence shows that the Board is not financially responsible for individuals placed in nursing homes. Thus, because Jane is seeking placement in a nursing home, the Board's financial concern is speculative. It is also pure speculation as to whether Jane will develop problems warranting placement in a facility for which the Board would be financially responsible. More importantly, as the *Bethesda Lutheran* court pointed out, "the power of a state to confine its public services to residents does not entitle the state to establish arbitrary barriers to a nonresident's becoming a resident." *Bethesda Lutheran*, 122 F.3d at 448 (citation omitted).

¶ 23. Fundamentally, Jane simply seeks to exercise her constitutional right to move from one state to another, and any regulation that serves to discourage or thwart that right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional. *See Shapiro*, 394 U.S. at 634. The Board has failed to establish a compelling governmental interest in restricting Jane's right to travel to Wisconsin to reside in a nursing home for her long-term care.

## CONCLUSION

¶ 24. WISCONSIN STAT. § 55.06(3)(c) governing the filing of a petition for protective placement, requires the ward to reside in a Wisconsin county when a protective placement petition is filed. We agree with the persuasive reasoning of *Bethesda Lutheran* and conclude that this statute, as applied to Jane, violates her constitutional right to interstate travel. We therefore reverse the order of the circuit court dismissing the petition and remand for proceedings consistent with this order.

*By the Court.*—Order reversed.