IN The MATTER OF the GUARDIANSHIP AND IN The MATTER OF CONSERVATORSHIP OF JOSEPH P., Alleged Incompetent:

Gloria COSTON and Gloria Martony, Appellants,†

v.

JOSEPH P. and Laura J. Petrie, Respondents.

Court of Appeals

*No. 97–1210.  Oral argument June 24, 1998.—Decided September 15, 1998.*

(Also reported in 586 N.W.2d 52.)

†Petition to review denied.

1

On behalf of the appellants, the cause was submitted on the briefs of *Patricia M. Cavey* of the *Mental Disability Law Center,* of Milwaukee. Oral argument by *Patricia M. Cavey.*

On behalf of the respondents, the cause was submitted on the joint brief of *Janet F. Resnick* of *Resnick & Associates,* counsel for Joseph P., *Laura J. Petrie,* of *Petrie & Stocking, S.C.,* counsel for Laura J. Petrie, *Elizabeth Carlson* of *Karlsson & Carlson,* guardian ad litem for Joseph P., *James J. Barrock,* of *Barrock & Barrock,* counsel for Adeline P., and *David S. Berman* of *David S. Berman Law Office,* guardian for Joseph P., all of Milwaukee. Oral argument by Janet F. Resnick.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

SCHUDSON, J. Gloria Coston, the sister of Joseph P., and Gloria Martony, the niece of Joseph P., appeal from the circuit court orders determining that Joseph P. is incompetent, appointing a guardian for his estate and person, and ordering his protective placement. Coston and Martony contend: (1) that the circuit court erred, as a matter of law, in ordering Joseph P.'s guardianship and protective placement without conducting a full evidentiary hearing on the issue of whether he was competent and that, in failing to conduct a full hearing on the merits, the court violated Joseph P.'s due process rights; (2) that they, as "interested persons," had the right to participate fully in the hearing and to object to the circuit court's reliance on hearsay documents–the doctors' and social worker's reports; and (3) that the evidence, without the hearsay reports, was insufficient to support the circuit court's finding that Joseph P. was incompetent and in need of protective placement.

Although, as we will detail, the circuit court record is seriously deficient in several respects, and although, as we will explain, Coston and Martony, as "interested persons," may seek further circuit court review of Joseph P.'s guardianship and protective placement, we reject Coston and Martony's arguments because: (1) they never objected to the petition for guardianship and protective placement; (2) they never objected to the circuit court's reliance on the hearsay documents; and (3) they never exercised any of the statutory rights of "interested persons" that otherwise might have brought about a full evidentiary hearing.

Further, because Coston and Martony failed to exercise the statutory rights of "interested persons" that might have led to a more extensive evidentiary hearing, and because no party objected to the petition,

4

we conclude that the hearing was uncontested. Therefore, the circuit court properly could conduct the hearing in an expedited manner, and could rely on the hearsay reports. Finally, we conclude that the evidence was sufficient to support the circuit court's determination that Joseph P. was incompetent and in need of protective placement. Accordingly, we affirm.

## I. BACKGROUND

This appeal arises from the filing of two separate petitions for the guardianship and protective placement of Joseph P. On March 25, 1996, Adeline P., Joseph P.'s wife, filed the first petition for Joseph P.'s guardianship and protective placement. In accordance with § 880.331, STATS.,[1] the circuit court appointed Attorney Elizabeth Carlson as Joseph P.'s guardian ad litem (GAL). Ms. Carlson objected to the guardianship petition and also advised the court that Joseph P. had retained advocacy counsel,[2] Attorney Denis Regan, who later was replaced by Attorney Janet Resnick.

---

[1] Section 880.331, STATS., provides, in relevant part:

**Guardian ad litem in incompetency cases.**

(1) APPOINTMENT. The court shall appoint a guardian ad litem whenever it is proposed that the court appoint a guardian on the ground of incompetency under s. 880.33, protectively place a person or order protective services under s. 55.06, review any protective placement or protective service order under s. 55.06 or terminate a protective placement under s. 55.06.

[2] Counsel representing persons subject to mental health and guardianship proceedings are referred to as either "advocacy" counsel or "adversary" counsel. *See Tamara L.P. v. County of Dane*, 177 Wis. 2d 770, 503 N.W.2d 333 (Ct. App. 1993); and § 51.20(3), STATS. In this opinion, we refer to Joseph P.'s counsel as "advocacy" counsel.

On July 17, 1996, pursuant to their stipulation, Adeline P., Joseph P.'s GAL, and Joseph P. by his advocacy counsel moved to dismiss the petition for guardianship and agreed to a conservatorship with Attorney Laura Petrie serving as his conservator.[3] The circuit court then entered the order appointing Ms. Petrie as conservator of Joseph P.'s estate.

On December 4, 1996, Ms. Petrie filed the second petition for Joseph P.'s guardianship and protective placement. The next day, Coston and Martony, through counsel, filed a notice of retainer and representation as interested persons under § 880.01(6), STATS.[4] They did not, however, file an objection to the petition for guardianship and protective placement.

On February 6, 1997, the circuit court heard the conservator's request for guardianship and the termination of the conservatorship. The only testimony, however, was that of the conservator/petitioner, Ms. Petrie, relating only to the content of the petition and to Joseph P.'s finances. Ms. Resnick asked only one question, eliciting Ms. Petrie's response that, as the petitioner, she wanted to orally amend the petition to request that Attorney David Berman be appointed guardian of Joseph P.'s person and estate. Attorney

---

[3] Section 880.31(1), STATS., provides, in relevant part:

**Voluntary proceedings; conservators.** (1) Any adult resident who believes that he or she is unable properly to manage his or her property or income may voluntarily apply to the circuit court of the county of his or her residence for appointment of a conservator of the estate.

[4] Section 880.01(6), STATS., provides: " 'Interested person' means any adult relative or friend of a person to be protected under this subchapter; or any official or representative of a public or private agency, corporation or association concerned with the welfare of the person who is to be protected."

James Barrock, representing Adeline P., stated that he did not object to Mr. Berman being appointed guardian, and Attorney Patricia Cavey, representing Coston and Martony, asked to defer expressing an opinion on that subject until Joseph P. testified. Joseph P., however, never testified, and Ms. Cavey did not again address the subject of Mr. Berman's appointment.

The court then considered the suitability of Mr. Berman to serve as Joseph P.'s potential guardian. Because Joseph P. had never met Mr. Berman, and because the judge, the Honorable Patrick T. Sheedy, had not read the medical reports and social worker's report, a twenty-five minute recess was taken. Following the recess, Judge Sheedy announced that he had reviewed the reports and asked for a "report. . .on what was decided in chambers [regarding Mr. Berman's suitability to serve as guardian]." He also noted that he had spoken with Joseph P.'s sister who "was of the view that Mr. P. was competent."[5] The following colloquy then took place:

---

[5] At oral argument, Ms. Cavey attempted to clarify what had occurred during the off-the-record proceedings. She noted that while she and the parties were in chambers discussing the suitability of the proposed guardian, Coston and Martony remained in the courtroom and, when Judge Sheedy left his chambers and returned to the courtroom, Coston informed him that she believed her brother was competent.

Although this alleged *ex parte* communication was inadvertent, its content was important, thus providing one more reminder that off-the-record proceedings may often be problematic. Indeed, at oral argument in this case, the parties informed this court that substantial parts of the hearing were held off the record. Here, as in all too many cases, the record is seriously deficient and a circuit court's off-the-record informality has undermined the process of appellate review. While we recognize the many temptations to indulge in off-the-record proceedings,

THE COURT: All right. Let the record—

MS. RESNICK: I don't think he has an objection to Mr. Berman.

THE COURT: He does?

MS. RESNICK: Is it okay if [Mr. Berman] works with you?

MR. P[.]: Yeah.

MS. RESNICK: And helps you take care of your money?

MR. P[.]: He's a nice guy; sure.

THE COURT: All right.

MS. RESNICK: The question becomes whether he wants an independent report and a trial, and I don't—I think we have been all over the board.

THE COURT: To be frank with you, again, he certainly—[Ms.] Resnick, I will certainly acquiesce. It appears to me from the state of the record to date that this may be an expenditure that is somewhat useless.

MS. RESNICK: Judge, frankly, I understand that, but my client has a right to it.

THE COURT: No question. I am not arguing that, [Ms.] Resnick.

MS. RESNICK: But we did talk about it and we went through it, and we went through it at length. Again, I met with Joe for hours.

THE COURT: And he wants it to go further?

MS. RESNICK: He said no, why spend the money.[6]

---

we again urge resistance to temptation. *See State v. Mainiero*, 189 Wis. 2d 80, 95 n.3, 525 N.W.2d 304, 310 n.3 (Ct. App. 1994).

[6] At oral argument before this court, Ms. Resnick stated that Joseph P. did not stipulate to being incompetent, but rather, conceded that he could not rebut the medical reports. Nothing in the circuit court record, however, suggests that this was his position. Neither Joseph P.'s advocacy counsel nor his

THE COURT: All right. Based upon the agreement of the parties, and based upon the statement of the Guardian ad Litem, and reviewing the applicable statute, 55.06—

MS. CAVEY: *Your Honor, maybe just before you rule, if I could just state the objection the—the objection from my clients, that we do object to—We are not doing this by stipulation, and if the Court is going to make a ruling that the Court is making that's not based on a stipulation. My clients believe he is competent.*

THE COURT: I—Again counsel, let me indicate to you again, I think that while your clients are interested and are probably very interested, being relatives, I can't help but believe that there is an issue of remoteness here and to carry to their logical conclusion, that he is competent, if he is competent and he agrees to it because of some physical infirmities, I would still be obligated to appoint a guardian.

As you say, I am between. . .[S]cylla and. . .[C]harybdis. For you not acquainted with Latin, it's a rock and a hard place.

And based upon that, I—I heard your statement and, of course, you may have my decision reviewed by the Court of Appeals, but based upon the information I have, the applicable Statutes 55.06, and Chapter 880 of the Statutes, I am satisfied in this case that a guardian certainly would be beneficial. I am going to discharge the conservator, and I will appoint Mr. David S. Berman as the Guardian to serve with a bond.

(Emphasis added.)

---

GAL even hinted at any objection to the petition. Thus, we admonish counsel to clarify their positions *on the record* and, even more importantly, we express our concern that Joseph P.'s position may not have been presented, a concern we will address in this decision.

## II.  ANALYSIS

Coston and Martony contend that the circuit court "erred, as a matter of law, in ordering, *over an objection*, a guardianship and protective placement without conducting a hearing or receiving evidence on the issue of competency." (Emphasis added.) Essentially, they argue that, as interested persons, they could contest the petition and object to the circuit court's reliance on both the doctors' reports assessing Joseph P.'s competence and the social worker's report addressing his placement needs. They claim that, *based on their objection*, the circuit court was required to conduct a full evidentiary hearing with testimony from the doctors and social workers who evaluated Joseph P., and was required to allow them to cross-examine the petitioner and the other witnesses.

Joseph P., in a brief by his advocacy counsel, and joined by his GAL and the petitioner/conservator, responds that the statutes only provide interested persons with limited rights and that, in the instant case, Coston and Martony failed to exercise those rights. Thus, he argues, the proceeding was uncontested and, therefore, the circuit court did not have to conduct a full evidentiary hearing.

Whether a circuit court may appoint a guardian under chapter 880, STATS., and order protective placement under chapter 55, STATS., without a trial on the merits, when the proposed ward, his advocacy counsel and his GAL have not objected, but "interested persons" allegedly have, is an issue of first impression. It also is an issue requiring statutory interpretation. The interpretation of a statute is a question of law, which we review *de novo. See Agnes T. v. Milwaukee County*, 189 Wis. 2d 520, 525, 525 N.W.2d 268, 269 (1995). In

10

interpreting a statute, we must seek to effectuate the intent of the legislature. *See State v. Olson*, 175 Wis. 2d 628, 633, 498 N.W.2d 661, 663 (1993). If the language of the statute is unambiguous, however, "we will not look beyond the language of the statute in applying it." *State v. Swatek*, 178 Wis. 2d 1, 5, 502 N.W.2d 909, 911 (Ct. App. 1993).

## A. Interested Persons

Section 880.01(6), STATS., defines an "[i]nterested person" as "any adult relative or friend of a person to be protected under this subchapter; or any official or representative of a public or private agency, corporation or association concerned with the welfare of the person who is to be protected." Clearly Coston and Martony, as sister and niece respectively, are among those whom the statute defines as "[i]nterested person[s]." Thus, to determine whether Coston and Martony could object to the petition and transform an otherwise uncontested proceeding into a contested hearing, we must examine the statutes delineating what an interested person may do in guardianship and protective placement proceedings.

Pursuant to chapter 880, STATS., and chapter 55, STATS., interested persons can have important roles in guardianship and protective placement proceedings.[7] Most prominently, interested persons: (1) may petition for the appointment of a guardian, *see* § 880.07(1), STATS.; (2) may nominate a guardian, *see* § 880.09, STATS.; (3) may petition for discharge of a guardian and appointment of a new guardian, or may petition to have

---

[7] We note, however, that, unlike chapter 880, STATS., chapter 55, STATS., does not define "interested persons."

11

the guardian of the ward's property designated as a limited guardian, *see* § 880.34(3), STATS.; (4) may petition for review of a finding of incompetency, *see* § 880.34(4), STATS.; and (5) may petition for restoration of a ward's legal rights, *see* § 880.33(3), STATS.[8] Neither

---

[8] In addition, the guardianship statutes specifically provide interested persons with the power to make requests on behalf of the proposed ward. *See, e.g.*, § 880.08(1), STATS. (interested persons may request a different location for the hearing, if the proposed ward is unable to attend the hearing due to physical inaccessibility or lack of transportation); § 880.16(4), STATS. (interested persons may complain to the circuit court if they suspect fraudulent activity by the guardian); § 880.33(2)(b), STATS. (interested persons may request an independent medical or psychological examination of the proposed ward); § 880.17(1), STATS. (interested persons may petition the court to appoint a successor guardian when the previous guardian dies, is removed by the court or resigns); § 880.19(5)(b), STATS. (interested persons may apply to the court for the sale or other disposition of property for specified purposes, including the best interests of the ward); § 880.191, STATS. (any "party interested" may request that the court examine the guardian on oath regarding inventories); § 880.252, STATS. (any "party interested" may petition the court to issue an order to show cause and require the guardian to come before the court and explain why he or she should not make or file an account); § 880.33(3), STATS. (interested persons may petition the court for restoration of legal rights, such as the right to vote); § 880.34(6)(e), STATS. (interested persons may request a hearing to review guardianship where the petition alleged that the proposed ward was not competent to refuse psychotropic medicine under § 880.33(4m) (a), STATS.).

Interested persons also have the right to receive notice of proceedings under chapter 880, STATS. *See, e.g.*, § 880.07(1)(h), STATS. (petition for guardianship must include the names and addresses of persons believed by the petitioner to be interested); § 880.16(2), STATS. (the court may remove a guardian for cause

the guardianship statutes nor the case law, however, provides interested persons with unlimited rights to participate in the hearing. With this in mind, we turn to Coston and Martony's arguments.

## B.   *Hearing on the Petition*

after notice to the guardian and others interested); § 880.17(2), STATS. (if the appointment of a successor guardian is made without a hearing, the successor guardian shall provide notice to, among others, all interested persons); § 880.192, STATS. (if the court believes the guardian is guilty of fraud, waste, or mismanagement, and after examination believes it is necessary to proceed further, the court shall give notice to, among others, all persons interested and if the court feels that the interests of the estate and the persons interested require it, the guardian may be removed and another appointed); § 880.253, STATS. (the court shall give notice to all interested persons when requiring an accounting by the guardian at a hearing), § 880.33(2)(e), STATS. (persons in interest may be present at a closed hearing on a petition for guardianship alleging that the proposed ward is not competent to refuse psychotropic medicine).

Chapter 880, STATS., also explicitly limits that which an "interested person" may do, in only one way. *See* § 880.331(2), STATS. (no person who is an interested party, or a relative or representative of an interested party, may be appointed guardian ad litem).

We note that these statutes use terms that seem intended to be nothing more than semantic variations of "interested person." For example, §§ 880.191 & 880.252, STATS., use the term "party interested" and § 880.16(2), STATS., uses the term "others interested." In this case, the parties do not hinge any arguments on any of these variations. Thus, although the distinction between a "party" and an "interested person" is significant in other ways we will explain, we, like the parties, do not attach any legal significance to these particular semantic variations.

13

Coston and Martony, relying on *R.S. v. Milwaukee County*, 162 Wis. 2d 197, 470 N.W.2d 260 (1991), argue that the circuit court was required to conduct a full evidentiary hearing and could not rely on the doctors' and social worker's hearsay reports of their evaluations. They contend that the conservator/petitioner, Ms. Petrie, did not meet her burden because she never called the doctors and social worker to testify at the hearing. They further maintain that, as a result, they were denied their right to cross-examine the doctors and social worker. We disagree.

Coston and Martony's arguments rest on a surface reading of *R.S.* Not only is *R.S.* factually and legally distinguishable, but it actually clarifies the basis for our rejection of Coston and Martony's claims.

In *R.S.*, the proposed ward was residing in a health care center when a caseworker petitioned for guardianship. R.S.'s guardian ad litem informed the court that R.S. objected to the petition, and the circuit court then appointed advocacy counsel for her. At the trial, only the caseworker/petitioner testified. When Milwaukee County corporation counsel, representing the caseworker/petitioner, moved to introduce the psychologist's report into evidence, counsel for R.S. objected, arguing that the report was hearsay and improperly authenticated. R.S.'s counsel also argued that unless corporation counsel called the psychologist to testify, R.S.'s right to cross-examination, allegedly guaranteed by § 880.33(2), STATS.,[9] could not be exercised. The cir-

---

[9] Section 880.33, STATS., provides, in pertinent part:

**Incompetency; appointment of guardian.**

(1) Whenever it is proposed to appoint a guardian on the ground of incompetency, a licensed physician or licensed psychologist, or both, shall furnish a written statement concerning the mental condition of the proposed ward, based upon examination. . . .A copy of

cuit court then adjourned the proceedings to allow R.S. to subpoena the psychologist. *See R.S.*, 162 Wis. 2d at 201, 470 N.W.2d at 261.

When the trial resumed, however, counsel for R.S. had not subpoenaed the psychologist. *See id.* at 202, 470 N.W.2d at 261. Instead, counsel submitted a memorandum to the court opposing the admission of the psychologist's report. *See id.* The circuit court, characterizing the psychologist's report as "factual findings resulting from an investigation made pursuant to authority granted by law," received the report concluding that, although it was hearsay, the report was admissible under the public records exception. *See id.* at 204–05, 470 N.W.2d at 263; *see* RULE 908.03(8), STATS.[10] The circuit court then found the report trustworthy because the psychologist had testified before the court on numerous occasions and his credibility had never been challenged. *See R.S.*, 162 Wis. 2d at 205, 470 N.W.2d at 263.

the statement shall be provided to the proposed ward, guardian ad litem and attorney . . . .

(2) (a) 1. . . .The attorney or guardian ad litem for the proposed ward shall be provided with a copy of the report of the physician or psychologist at least 96 hours in advance of the hearing . . . .

[10] RULE 908.03, STATS., provides:

**Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) PUBLIC RECORD AND REPORTS. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law, or (c) in civil cases and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

■ This court affirmed the circuit court's order, but on different grounds. *See R.S. v. Milwaukee County*, 154 Wis. 2d 706, 454 N.W.2d 1 (Ct. App. 1990), *rev'd*, 162 Wis. 2d 197, 470 N.W.2d 260 (1991). Rejecting the circuit court's reliance on RULE 908.03(8), STATS., we held that the psychologist's report did not qualify for the hearsay exception because it was not a report, statement or finding of a "public office or agency," within the meaning of RULE 908.03(8). *See id.* at 714 n.8, 454 N.W.2d at 4 n.8. We did conclude, however, that the report was admissible under § 880.33, STATS., and RULE 908.02, STATS.[11] This court concluded that § 880.33, STATS., implicitly authorized the admission of the report as an exception to the hearsay rule. *See id.* at 713–14, 454 N.W.2d at 4.

The supreme court reversed, noting that it could:

find no basis for the court of appeals' concluding that the legislature intended the words in sec. 880.33 that a "licensed physician or licensed psychologist shall furnish a written statement" and "the attorney or guardian ad litem of the proposed ward shall be provided with a copy of the report" to mean that "the circuit court shall admit the written report into evidence as an exception to the hearsay rule under sec. 908.02."

*R.S.*, 162 Wis. 2d at 207, 470 N.W.2d at 264. The court then added: "If the legislature had intended for the report to be admitted into evidence at trial as an exception to the hearsay rule, it would have said so. It did not." *Id.* Consequently, the supreme court concluded:

---

[11] RULE 908.02, STATS., provides: "**Hearsay rule.** Hearsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute."

> [T]he written report submitted to the circuit court diagnosing [the proposed ward] as suffering from chronic schizophrenia was, without the testimony of the psychologist, hearsay and inadmissible *over objection in a contested hearing* because it did not come within any exception to the hearsay rule. We further conclude that sec. 880.33(2)(a)1 requires the petitioner to call as a witness the licensed psychologist or physician who furnished the report in a *contested* guardianship proceeding.

*Id.* at 199–200, 470 N.W.2d at 260–61 (emphasis added).[12] The court declared "that sec. 880.33 read as a whole demonstrates that the legislature intended the petitioner to produce the licensed professional reporting to the court to testify in person in a *contested* guardianship proceeding." *Id.* at 209, 470 N.W.2d at 265 (emphasis added). The court also indicated that, in a *contested* guardianship proceeding, a petitioner could not carry the burden of proof without in-person

---

[12] To reach this conclusion, the supreme court carefully examined the statutes. The court explained that although nothing in § 880.33, STATS., explicitly requires the petitioner to call the physician or psychologist, several provisions of chapter 880 implicitly do so. The court noted: 1) the definition of "incompetent" has a medical or psychological component, requiring a practitioner's diagnosis, *see* § 880.01(4), (8), STATS.; 2) the burden of proving incompetence is on the petitioner, *see* § 880.33(4), STATS.; 3) the statutes expressly require the petitioner to provide the GAL, advocacy counsel, and the proposed ward with "copies of the reports at least 96 hours in advance" of the hearing, allowing representatives of the proposed ward to prepare questions, *see* § 880.33(1), (2)(a)1; and, 4) the statutes expressly give the proposed ward the right to present and cross-examine witnesses, *see* § 880.33(2)(a)1. *See R.S. v. Milwaukee County*, 162 Wis. 2d 197, 208–09, 470 N.W.2d 260, 264–65 (1991).

testimony from the examining psychologist or physician. *See id.* at 210, 470 N.W.2d at 265.

Thus, clearly and repeatedly, the supreme court confined its conclusions to a *contested* hearing.

> We emphasize that this case involves a *contested* guardianship proceeding. *We do not question a circuit court's reliance on a licensed professional's written report under sec. 880.33 when the proposed ward does not object to the appointment of a guardian or does not object to the report being admitted as evidence.* The legislature probably imposed the requirement of the report to aid the court and to protect proposed wards against improvident appointment of guardians based only on the testimony of possibly overzealous or self-interested petitioners. In uncontested guardianship proceedings the licensed professional's report may serve the important function of providing the opinion of a "disinterested" professional upon which the circuit court may rely to determine the appropriateness of the proposed guardianship. In an uncontested guardianship case the proposed ward agrees to the guardianship and waives his or her rights to object to the report as hearsay. But although the report is useful in an uncontested guardianship proceeding, it does not follow that in a contested guardianship proceeding the report must be admitted into evidence as an exception to the hearsay rule.

*Id.* at 207–08, 470 N.W.2d at 264 (citation omitted; first emphasis in original; second emphasis added).

Unlike the proceeding in *R.S.*, the proceeding in the instant case was not contested. Coston and Martony never filed an objection to the petition for guardianship and protective placement. *See* MILWAU-

KEE COUNTY LOCAL COURT RULE 781.[13] Thus, even assuming, *arguendo*, that an interested person ultimately could fully participate in a trial of a petition for guardianship and protective placement, an interested person would not gain that opportunity without first filing a formal objection that, at the very least, notifies the parties and the court that the case is in a contested posture.

■

Coston and Martony never notified the parties and the court that they would contest the petition, and they never requested a full evidentiary hearing. Even when the circuit court invited those with objections to present them, counsel for Coston and Martony sat silent.[14] Their counsel's only comment even bordering on an objection came almost at the end of the hearing: "[I]f I could just state the objection the—the objection from my clients, that we do object to—" To say the least, this falls short of a recognized objection. *See* § 901.03(1)(a), STATS. *See also Vollmer v. Luety*, 156 Wis. 2d 1, 10, 456 N.W.2d 797, 801 (1990) (" '[I]n the absence of a specific objection which brings into focus the nature of the alleged error, a party has not preserved its objections for review.' "); *Holmes v. State*, 76 Wis. 2d 259, 271, 251 N.W.2d 56, 62 (1977) (an objection is sufficient to preserve an issue for appeal if it apprises the court of the

---

[13] MILWAUKEE COUNTY LOCAL COURT RULE 781, governing contests in probate and mental health proceedings, provides:

Except issues as to claims and petitions for construction, objections, before filing, shall be served upon the attorney of record. . . .

[14] As the Petitioner was testifying, the court interrupted and said: "Anybody who has any objections that she says during the proceedings, speak up. Let's get a full statement." Counsel for Coston and Martony made no objection.

specific grounds upon which it is based); *State v. Peters*, 166 Wis. 2d 168, 174, 479 N.W.2d 198, 200 (Ct. App. 1991) ("To be sufficiently specific, an objection must reasonably advise the court of the basis for the objection."). Thus, because Coston and Martony did not contest the petition, and because Joseph P., his advocacy counsel, and his GAL did not contest the petition, the hearing was uncontested. Therefore, the circuit court did not have to conduct a full evidentiary hearing. *See R.S.*, 162 Wis. 2d at 208, 470 N.W.2d at 264. *See also* GRETCHEN VINEY, GUARDIANSHIP AND PROTECTIVE PLACEMENT FOR THE ELDERLY IN WISCONSIN § 4.30 (1996) ("In many counties, uncontested hearings are very informal . . . .").

Further, Coston and Martony never objected to the admission of the doctors' and social worker's reports. Accordingly, we conclude that the trial court could properly consider the reports. *See R.S.*, 162 Wis. 2d at 208, 470 N.W.2d at 264 ("In an uncontested guardianship case the proposed ward agrees to the guardianship and waives his or her rights to object to the report as hearsay.").

As noted, chapters 880 and 55, STATS., delineate the rights of interested persons. *See* Footnote 8 above. However, even those statutes providing interested persons with the opportunity to make requests on behalf of a proposed ward do not confer any right to participate in the actual hearing. *See, e.g.*, § 880.33(2)(b), STATS. (interested person may request an independent psychological evaluation, but *the proposed ward* may present the report or the evaluator's personal testimony). As *R.S.* reiterated, only the proposed ward, the guardian ad litem, and advocacy counsel for the proposed ward have the right to present and cross-examine witnesses. *See R.S.*, 162 Wis. 2d at 209, 470

20

N.W.2d at 264. *See also* § 880.33(2)(a)1, STATS. (requiring that a copy of the written statement of proposed ward's mental condition be provided to proposed ward, GAL and advocacy counsel ninety-six hours in advance of the hearing to assist them in preparing for the hearing, but not requiring that a copy be provided to interested persons).[15] No statute provides for interested persons to demand a trial, present evidence, or raise evidentiary objections in guardianship and protective placement hearings—whether contested or uncontested.

This is not to conclude, however, that circuit courts are foreclosed from allowing for the participation of interested persons. Depending on the facts and circumstances of a given case, a court could consider such participation to be very helpful, and could exercise discretion to allow interested persons to participate to the extent it would deem appropriate. Moreover, given the many and diverse opportunities granted by statute for interested persons to influence the proceedings, it would not be unusual for an interested person's initiative to trigger a party's recognition of issues that might merit a trial.

Thus, while we acknowledge that the statutory provisions for an interested person's formal participation in guardianship and protective placement hearings are specific and limited, we also appreciate

---

[15] Section 880.33(2)(a)1, STATS., provides, in relevant part:

The proposed ward has the right to a trial by a jury if demanded by the proposed ward, attorney or guardian ad litem . . . . The proposed ward, attorney or guardian ad litem shall have the right to present and cross-examine witnesses, including the physician or psychologist reporting to the court . . . . The attorney or guardian ad litem for the proposed ward shall be provided with a copy of the report of the physician or psychologist at least 96 hours in advance of the hearing.

that these statutory mechanisms do indeed allow for an interested person's input in many ways. In this case where, as the abbreviated on-the-record proceedings imply, Joseph P.'s position may not have been adequately or clearly presented, we are reassured by the ever-present opportunity provided not only to the parties, but also to Coston and Martony to, among other things, petition for the review of Joseph P.'s incompetency, *see* § 880.34(4), STATS., and for the restoration of his legal rights, *see* § 880.33(3), STATS., should these or other options be appropriate.[16]

## C. Sufficiency of the Evidence

Coston and Martony also argue that the petitioner did not establish by clear and convincing evidence that Joseph P. was incompetent or in need of protective placement. We disagree.

The circuit court's factual findings will not be overturned unless clearly erroneous. *See* § 805.17(2), STATS.

---

[16] Coston and Martony also argue that the proceeding violated the Due Process Clause "by failing to give reasonable notice of the issues involved, failing to require clear and convincing evidence of incompetency, failing to permit the introduction of evidence of competency, and by failing to consider less restrictive alternatives." We disagree. Clearly, the petition set forth the basis for and provided notice of the request for Joseph P.'s guardianship and protective placement. Clearly, Joseph P., his GAL, and his advocacy counsel had the opportunity to object to the petition. And, as we discuss in the last section of our decision, the reports presented at this uncontested proceeding provided clear and convincing evidence of incompetency, and adequately addressed whether Joseph P.'s nursing home constituted the least restrictive alternative for his protective placement.

The issues of whether the evidence satisfies the legal standard for incompetency and whether the evidence supports protective placement are questions of law, which we review *de novo*. *See Cheryl F. v. Sheboygan County*, 170 Wis. 2d 420, 425, 489 N.W.2d 636, 637–38 (Ct. App. 1992). At a hearing on a petition for guardianship, the petitioner bears the burden of proving, by clear and convincing evidence, that the proposed ward is incompetent. *See* § 880.33(4), STATS.; *R.S.*, 162 Wis. 2d at 202–03, 470 N.W.2d at 262. Section 880.01(4), STATS., defines an incompetent as "a person adjudged by a court of record to be substantially incapable of managing his or her property or caring for himself or herself by reason of infirmities of aging, developmental disabilities, or other like incapacities. Physical disability without mental incapacity is not sufficient to establish incompetence." "Incompetency as defined thus has two components: (1) the functional incapacity and (2) the disorder or disability causing the functional incapacity." *R.S.*, 162 Wis. 2d at 203, 470 N.W.2d at 262.

Pursuant to chapter 55, STATS., before a court may order protective placement, it must determine that: (1) the ward has a primary need for residential care and custody; (2) the ward has been deemed incompetent by a circuit court; (3) the ward, due to his or her infirmities, is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or to others; and (4) the disability is permanent or likely to be permanent. *See* § 55.06(2), STATS.

The petition in this case alleged that Joseph P. "suffers from dementia [and] . . . requires 24 hour supervision and care in a community based residential

23

facility." The petition also alleged that "the proposed ward is a suitable person for protective placement in the least restrictive environment consistent with his needs." At the hearing, the conservator/petitioner testified as to the contents of the petition and submitted the required reports. Neither Joseph P., nor his advocacy counsel, nor his GAL objected.

The circuit court relied on three reports: a letter from Maury B. Berger, M.D.; (2) a report from Diane V. DiGiulio, Ph.D.; and (3) a Department on Aging Comprehensive Evaluation from Elaine Pagliaro, M.S., R.N., G.N.P.[17] Dr. Berger's letter, written in reference to the first petition for guardianship, opined that Joseph P. "has at least moderate dementia and Alzheimer's disease." The other two reports, written with regard to the second petition, provided additional support. Dr. DiGiulio found:

> current test results demonstrate generalized cognitive deterioration consistent with a dementia process of moderate severity. In comparison to pre-

[17] Coston and Martony complain that the circuit court relied on Dr. Berger's report, which was filed with the first petition in March 1996. They contend that if the court reviewed Dr. Berger's report, then it should also have reviewed the other reports, filed in connection with the first petition, countering those supporting the earlier petition. We disagree. In the first place, no one objected to the court's consideration of Dr. Berger's report. In the second place, Dr. Berger's report was substantially similar to Dr. DiGiulio's and, therefore, any erroneous consideration of Dr. Berger's report was harmless.

Moreover, we note that, pursuant to § 880.33(2)(b), STATS., Coston and Martony could have secured an independent medical or psychological evaluation of Joseph P., and Joseph P., his counsel, or his GAL could have presented that report to the court and could have called its author to testify.

24

vious test results assessed in May of 1996, there does not appear to have been any improvement in this patient's overall level of functioning. . . .This patient's general intellectual abilities, memory, reasoning, and judgement are significantly impaired.

Dr. DiGiulio diagnosed Joseph P. as having "generalized cognitive deterioration . . .. . . consistent with a dementia process of moderate severity," and concluded that he was "incompetent to make decisions regarding all aspects of his medical treatment, financial affairs, and decisions regarding his physical placement and selection of a guardian." Dr. DiGiulio also concluded that "[Joseph P.'s] psychological condition demonstrates a need for residential care in a placement setting in which he can receive supervision."

Ms. Pagliaro's report addressed Joseph P.'s need for protection and placement. She reported that Joseph P. needed substantial supervision. After interviewing Joseph P. and the staff at his nursing home, she found:

[Joseph P.] does have a primary need for residential care and custody, is so totally incapable of providing for his own care or custody as to create a substantial risk of serious harm to himself or others at least through the acts of omission, does have a disability within the meaning of Wis. state statute 55.06(2) and that there is a Guardianship petition alleging incompetency pending before the circuit court.

Ms. Pagliaro recommended that Joseph P. have twenty-four-hour supervision and supportive care provided in a community based residential facility.

Based on these reports the court concluded that Joseph P. was incompetent. The court then determined who should serve as his guardian. Joseph P.'s counsel, his GAL, his wife, and the petitioner all agreed that

Mr. Berman would be a suitable guardian. Here again, counsel for Coston and Martony did not object, but rather, indicated that she wished to "defer offering an opinion." Therefore, the court appointed Mr. Berman as guardian of the person and estate of Joseph P. In accordance with § 55.06(2), STATS., the court then ordered that Joseph P. be protectively placed in the least restrictive placement commensurate with his needs.

■

Thus, the essential facts were undisputed. Experts had determined that Joseph P. was incapable of providing for his own care as a result of infirmities of aging, that his disability was permanent, and that he was in need of residential treatment. Accordingly, we conclude that the evidence was sufficient to support the circuit court's orders determining Joseph P.'s incompetence, appointing a guardian, and providing protective placement.[18]

*By the Court.*—Orders affirmed.

---

[18] We note that the order determining guardianship erroneously states that the petitioner, Attorney Laura Petrie, was represented by Attorney Janet Resnick. The record establishes, however, that Ms. Resnick appeared on behalf of Joseph P., not the petitioner. We direct the circuit court to correct the order accordingly.