COURT OF APPEALS
DECISION
DATED AND FILED

September 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2028**

STATE OF WISCONSIN

Cir. Ct. No. 2023GN2

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF D.J.F.

V.K.,

PETITIONER-RESPONDENT,

V.

D.J.F.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Affirmed.*

¶1     LAZAR, J.[1] David[2] appeals from an order of the circuit court granting protective placement.  He contends that his mother, Valerie, failed to present the opinion of a medical expert to support the finding that protective placement was appropriate.  He further asserts that the movant failed to prove by clear and convincing evidence that his condition is permanent as required by WIS. STAT. § 55.08(1)(d).  Valerie disputes both allegations.

¶2     There is no statute or binding precedent that requires a medical professional to testify in a protective placement proceeding where there is a stipulation to the necessity for the guardianship.  Moreover, the circuit court's reliance upon that stipulation, together with an agreement that only the particular placement was at issue, as well as two medical reports in the Record, and the testimony of a social worker familiar with David's diagnoses and behavior, was sufficient for the court to conclude that David should be placed in protective placement.  This court, therefore, affirms.

**BACKGROUND**

¶3     In January 2023, Valerie filed petitions for guardianship and protective placement of David.  The circuit court scheduled a hearing and ordered that a physician or psychologist's report be filed before the hearing.  Dr. Alan Hirsch, David's treating physician from Illinois, filed a physician's report.  Neither David nor counsel appeared at the hearing at which Valerie requested a temporary

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] This court refers to the subject individual by a pseudonym, David, consistent with WIS. STAT. § 809.19(1)(g), to protect his confidentiality.  His mother is, likewise, referred to by a pseudonym (Valerie).

guardianship to allow David to be returned to Walworth County from an inpatient facility in Illinois. The court granted the temporary guardianship. Thereafter, David's guardian ad litem filed an objection to the temporary guardianship, and the court held a rehearing. After the rehearing, the court again granted the temporary guardianship, ordered Walworth County Department of Health and Human Services to file a comprehensive evaluation, and scheduled a date for a final hearing.

¶4 Three evaluations or physician's reports were filed prior to the final hearing. In addition to Dr. Hirsch's initial physician's report, the County filed a comprehensive evaluation by Mary Boudry, an adult protective services (APS) agent, and Dr. Kristin Johnson, a psychologist, filed an examining psychologist's report and supplement. The physician and psychologist's reports both indicate that David suffers from a mental condition that was permanent or likely to be permanent: (1) Dr. Hirsch opined that David suffers from a serious and persistent mental illness (schizoaffective disorder, bipolar type) that is likely to be permanent; (2) Dr. Johnson opined that David suffers from the same mental illness or impairment, that it is permanent and/or likely to be permanent and that:

> [David] appears to be an individual who has an incapacity due to serious and persistent mental illness. His main diagnosis is schizoaffective disorder, bipolar type. This illness is a lifelong condition that requires treatment to manage the symptoms.

¶5 On April 18, 2023, at the start of the hearing on both petitions, the parties all agreed that David would no longer be contesting the guardianship but was still contesting the petition for protective placement. In particular, Valerie's counsel summarized the stipulation as follows:

> My understanding is that [David] will agree that there is a need for guardianship, that he's not objecting to the finding

> of incompetency based on his serious and persistent mental illness and or underlying incapacities and that he is in need of a guardian.
>
> ....
>
> He does however, disagree with the need for protective placement[.]

¶6 On April 27, 2023, the circuit court granted the petition for guardianship (due to incompetency), finding that David was incompetent because he was impaired due to a serious and persistent mental illness and other like incapacities and appointed Valerie guardian of David.

¶7 At the final hearing, the circuit court noted that "[t]he only issue now is where the placement should be." All parties agreed with that assessment. Testimony was elicited from Valerie and from Boudry. The parties agreed that Boudry should be permitted to give "opinions within her area of expertise of APS." She testified that a comprehensive evaluation is a "brief history" as well as an "analysis of current functioning and need." Boudry had met with David to gather history for this evaluation and to "check records and medication compliance and things like that."

¶8 Boudry testified that David resided at a group home and that staff "bring[s] him his medications at the appropriate times and observe[s] him take them." She testified that the group home "offer[s] activities" but that "[David] kind of isolat[es] in his room" and does not participate in them. David is "independent with his hygiene" and "is able to clean his room on his own." When asked if David has a "primary need for residential care and custody," Boudry responded that "[h]e has a primary need for … a setting that can monitor his medications." Boudry further testified that David's "history shows that when he is not supervised, he eventually stops taking his medications." She stated that, when

not properly medicated, David has in the past become a danger to himself and others. Boudry also testified that David has a severe and persistent mental illness and that, in her opinion, his mental illness is a permanent disability. She further mentioned that she relied upon the additional report (filed by Dr. Johnson).

¶9 Valerie also testified. When asked her opinion whether her son was stabilized enough for a less-restrictive placement, Valerie testified that he was not. David's counsel objected that Valerie was not qualified to give that opinion because she is not a "doctor [or] other similar professional[]." The circuit court overruled counsel's objection, stating, "I think knowing [David] his entire life, she can do that." Counsel repeated the question, and Valerie stated that she did not believe that David was "stabilized enough to leave the group home." Valerie opined that David would not participate in a voluntary program because he did not want to take one of his medications, an Invega injection.

¶10 During arguments, the County argued that the proposed group home placement was the least restrictive and that

> Ms. Boudry testified that through her review of records, she did determine that he has a serious and persistent mental illness, that is a disability that is permanent or likely to be permanent. Due to that disability, [David] is at risk of serious harm to himself or others.

¶11 David's counsel did not contest any of these statements in his closing argument and only focused upon whether Valerie had met the burden to establish that the group home was indeed the least restrictive placement. Instead, he argued for intensive supervision in the community, especially since David was already under the guardianship. David's guardian ad litem asked the circuit court to grant the protective placement as recommended by the County and Valerie.

¶12 The circuit court granted protective placement in the group home, stating:

> All right. Well, we've already had a guardianship that's been established for [David] by his mother … . And based on her testimony and the testimony of Ms. Boudry, I believe that the burden of proof of clear and convincing evidence has been met. He clearly is in need of protective placement. It doesn't have to be the most—some sort of inpatient sort of facility. This is a group home. And I believe that it is the least restrictive. He can't be independent, especially given that he needs a guardian. His mental illness is the cause of this. So it is a serious and persistent mental illness which I found last time and continue to find that makes him incapable of providing for his own care or custody, creat[ing] a risk of harm to himself or others. … And therefore I find that he does need protective services and placement, because of his incompetency and persistent mental illness and I grant the petitioner's petition[.]

¶13 David appeals.

## DISCUSSION

¶14 This court reviews a circuit court's decision on a protective placement petition under a mixed standard of review. Factual findings will not be set aside unless they are clearly erroneous. WIS. STAT. § 805.17(2). "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *Metropolitan Assocs. v. City of Milwaukee*, 2018 WI 4, ¶62, 379 Wis. 2d 141, 905 N.W.2d 784. Whether the evidence meets the requirements for protective placement is a legal question this court reviews de novo. *Coston v. Joseph P.*, 222 Wis. 2d 1, 23, 586 N.W.2d 52 (Ct. App. 1998).

¶15 A protective placement order requires the County or petitioner to prove by clear and convincing evidence that David meets four criteria: (1) he "has a primary need for residential care and custody"; (2) he "has been determined to

be incompetent by a circuit court"; (3) he "is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others" due to "developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities"; and (4) he "has a disability that is permanent or likely to be permanent." WIS. STAT. § 55.08(1)(a)-(d); *see also* ***Fond du Lac County v. Helen E.F.***, 2012 WI 50, ¶14, 340 Wis. 2d 500, 814 N.W.2d 179.

¶16     David first contends that Valerie did not present sufficient evidence to support the order for protective placement because she did not present the opinion of a medical or psychological expert. This argument, however is inapt due to the unusual circumstances of this case, because David stipulated to the determination that he required a guardianship, and his counsel agreed with the circuit court that the only issue remaining at the final protective placement petition hearing was "where the placement should be." By the stipulation (at the guardianship petition hearing) and lack of objection to the issues remaining in the protective placement petition hearing, David has forfeited[3] his right to now demand that expert medical testimony should have been presented at the final hearing to establish some of the four elements. *See* ***Wyandotte Chems. Corp. v. Royal Elec. Mfg. Co.***, 66 Wis. 2d 577, 589, 225 N.W.2d 648 (1975) (oral stipulations made on the record and taken down by a court reporter are binding on

---

[3] While such challenges may usually be raised on appeal "whether or not the party raising the question has objected in the trial court to such findings," WIS. STAT. § 805.17(4), they are clearly forfeited when a party abandons them in the circuit court.

parties on appeal); *Schill v Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45, 327 Wis. 2d 572, 786 N.W.2d 177 (an issue not raised below is treated as forfeited).[4]

¶17    The circuit court's guardianship order, entered eight days before the final hearing on protective placement, found David to be incompetent because he is impaired due to a serious and persistent mental illness and other like incapacities and that his "need for assistance in decision-making or communication is unable to be met effectively and less restrictively through appropriate and reasonably available training, education, support services, health care, assistive devices, or other means that [David] will accept." Thus, protective placement elements two and three were previously found by the court.

¶18    As to the permanency element, there were two expert reports—by Dr. Hirsch and Dr. Johnson both of which opined that David suffers from a serious and persistent mental illness (schizoaffective disorder, bipolar type) that is permanent or is likely to be permanent—that were filed and could have been used as exhibits during the protective placement petition hearing had those criteria been at issue; one or both of those doctors could also have been called to testify. None

---

[4] Our supreme court in *Schill v. Wisconsin Rapids School District*, 2010 WI 86, ¶45 n.21, 327 Wis. 2d 572, 786 N.W.2d 177, further elaborated as to when and why forfeiture is appropriate:

> Forfeiture is a rule of judicial administration. It is a fundamental principle of appellate review that issues must be preserved at the circuit court to be raised on appeal as a matter of right. If the issue is not preserved, an appellate court may consider the issue forfeited. The forfeiture rule gives the parties and the circuit court notice of the issue and a fair opportunity to address it; encourages attorneys to diligently prepare for and conduct trials; and prevents attorneys from "sandbagging" opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal.

8

of the parties nor the circuit court recognized a need to do so, given the prior stipulation and the parameters agreed to by the parties at the start of the hearing: it was evident to all that only the first criterion was at play. The parties were focused upon whether David had "a primary need for residential care and custody." *See* WIS. STAT. § 55.08(1)(a). Nothing more.

¶19 Next, David argues that, even if such a medical opinion is not required, the circuit court failed to make the required factual finding that David has a mental illness that is permanent or likely to be permanent.

¶20 Boudry agreed at the protective placement hearing that, in her opinion, David has a severe and persistent mental illness and this illness is a "permanent disability." This opinion was based upon the results of Boudry's comprehensive evaluation as well as review of various other records, including Dr. Johnson's report. In addition, David had stipulated to the guardianship and the necessary concomitant finding that he is incompetent and that he suffers from serious and persistent mental illness and other like incapacities. The only criteria not expressly included in the prior guardianship order was the finding that David's incapacity is permanent or likely to be permanent. However, the two previously filed doctor's reports contained medical opinions that held precisely that in support of that final criterion. The circuit court was allowed to rely on the reports in the Record and the court's own previously found adjudicative facts to determine whether David met that final statutory criterion for protective placement. The court then did include that finding in its written, final order.

¶21 Nonetheless, the circuit court did not make a record of much of that reliance. It did reference the testimony of Boudry (who relied upon the Johnson and Hirsch reports) but was not more specific. This court can only infer from the

circuit court's abbreviated explanation on the record and the findings set forth in the protective placement order, that it relied on all of those reports as well as the agreement that only the type of placement was at issue during the final hearing when it held that "the burden of proof of clear and convincing evidence has been met," and it granted the petition. The court *did* state that David's mental illness is "the cause of this" and it is "a serious and persistent mental illness ... that makes him incapable of providing for his own care or custody, creat[ing] a risk of harm to himself or others." But, this court does agree that there was no clear statement made in the oral ruling about the permanency of David's mental illness, nor is there a more complete explanation on the record by the circuit court as to *which* reports it was relying upon for each of the four criteria.[5] Absent the agreement of the parties in this case, that abbreviated explanation would give the court pause, but would not necessarily be determinative given a court's ability to review and rely upon documents and reports filed in the case. Here, the agreements made by the parties make a more thorough record unnecessary.

¶22 While the circuit court's findings here were sufficient, this court urges circuit courts in future cases to make a more complete record of their reliance on such documents and prior findings within the record when analyzing whether a petitioner has met its burden to show that an individual meets all of the

---

[5] The circuit court did take the time, at the guardianship petition hearing, to clarify that even Dr. Hirsch's report indicated that there was at least a likelihood of permanence despite some possible inconsistencies in the report. In fact, there was no confusion because, at the very least, Dr. Hirsch indicated that David's mental incapacity or disability is "**likely to be permanent**," and that is enough under the statutes. *See* WIS. STAT. § 55.08(1)(d). That report was mentioned in the Boudry Comprehensive Evaluation that was admitted as an exhibit during the protective placement petition hearing.

10

elements for protective placement. More complete and detailed findings made on the record during oral rulings are also strongly recommended.

¶23 This appeal presented unusual circumstances that are likely not present in most protective placement petitions; they clearly dictate this court's decision. They are unlikely to be duplicated in other appeals. First, the parties—including the subject individual—stipulated to the determination and order granting a permanent guardianship for David. Next, they all agreed that the only issue remaining at the protective placement petition hearing was *where* David was to be placed. Circuit courts—even in these circumstances—should take care to make a clear and thorough record as to which reports and which witnesses they rely upon to find the four criteria for protective placements and precisely spell out each finding with particularity. Notwithstanding that, the circuit court here was operating under a stipulated guardianship and a very limited protective placement hearing, so medical expert testimony was not required, nor were more specific findings necessary. Accordingly, the order for protective placement is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.