**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 3, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1702**

Cir. Ct. No. 2020GN25

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE PROTECTIVE PLACEMENT OF J.J.W.:

OZAUKEE COUNTY,

  PETITIONER-RESPONDENT,

 V.

J.J.W.,

  RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Ozaukee County: SANDY A. WILLIAMS, Judge. *Affirmed.*

¶1    NEUBAUER, J.[1]  Jacob[2] appeals from an order of the circuit court continuing his protective placement.  Because the record supports the circuit court's order, this court affirms.

¶2    In 2020, Ozaukee County (the County) petitioned for protective placement of Jacob.  The County's examining psychologist, Dr. Michael Kula, interviewed Jacob and filed a report with the circuit court diagnosing him with schizoaffective disorder.  The court ordered protective placement, and Jacob did not appeal.

¶3    The County petitioned for annual review of the protective placement in 2021 and again in 2022.  Jacob did not contest either of these petitions, and the circuit court continued Jacob's protective placement.  Then, in 2023, the County petitioned for a third annual review.  After Jacob withdrew his request for a full due process hearing, the court conducted a summary hearing at which the court found that Jacob continued to meet the standards for protective placement.

¶4    In 2024, the County again petitioned for annual review of Jacob's protective placement.  Jacob contested continued placement, and the circuit court held a full due process hearing.  Talika Smothers, a manager at Jacob's assisted living facility, testified Jacob has difficulty maintaining his focus due to auditory hallucinations and needs frequent redirection from staff.  She testified Jacob needs reminders to wear clean clothing, does not prepare his own meals, and has delusions that the FBI and the CIA are after him.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  For ease of readability, we utilize "Jacob" as a pseudonym.

¶5      Katie McCormick, a protective services investigator for the County, interviewed Jacob and testified that, during the evaluation, Jacob "had a hard time even maintaining conversation" due to being preoccupied with auditory hallucinations. She stated she was concerned that if Jacob were to cook for himself, he might "walk[] away from [his] food leaving it to burn." She also testified she "would be concern[ed] if [Jacob] were living by himself with no supervision" because, due to him being preoccupied with auditory hallucinations, Jacob may lack the "ability to take his medication independently," and may "walk[] into traffic."

¶6      The circuit court ordered a continuation of Jacob's protective placement. The court found Jacob's internal preoccupations presented a significant danger and expressed concern Jacob might "stop in the middle of traffic or head out in traffic not being aware of cars." Jacob subsequently filed the instant appeal from that order. Subsequently, the County filed for a fifth annual review in August 2025. Jacob obtained counsel, an independent medical evaluation, and contested placement at a full due process hearing. The court found Jacob continued to meet the standards for protective placement and ordered his placement continued. During the pendency of the instant appeal, Jacob also appealed that order.[3]

¶7      A circuit court may order a person protectively placed if he or she (1) "has a primary need for residential care and custody"; (2) "is an adult who has been determined to be incompetent by a circuit court"; (3) "[a]s a result of … serious and persistent mental illness … is so totally incapable of providing for his

---

[3] Case number 2026AP928.

3

or her own care or custody as to create a substantial risk of serious harm to himself or herself or others"; and (4) "has a disability that is permanent or likely to be permanent." WIS. STAT. § 55.08(1). The County must prove each of these elements by clear and convincing evidence. WIS. STAT. § 55.10(4)(d).

¶8 Whether a circuit court properly ordered a protective placement is a mixed question of law and fact. *Coston v. Joseph P.*, 222 Wis. 2d 1, 22-23, 586 N.W.2d 52 (Ct. App. 1998). The court's factual findings will not be disturbed unless clearly erroneous, but whether the evidence satisfies the statutory elements is a question of law this court reviews de novo. *Id*.

¶9 On appeal, Jacob asserts only that the County failed to prove the third element, namely, that Jacob "is so totally incapable of providing for his … own care or custody as to create a substantial risk of serious harm to himself … or others." WIS. STAT. § 55.08(1).[4] Specifically, Jacob argues the County "merely provided speculation" that Jacob's internal preoccupations might create a substantial risk of serious harm and failed to provide evidence of a direct and specific foreseeable risk.

¶10 The circuit court did not err when it concluded the County proved by clear and convincing evidence that Jacob presents a substantial risk of serious harm to himself. Smothers, a manager at Jacob's residential facility, testified she interacts with Jacob "everyday" [sic]. She stated that, despite Jacob's recent improvements, "he [is] still not focused" and that he requires frequent redirection from staff. When Jacob gets dressed, staff has to repeatedly direct him to not wear

---

[4] The parties dispute whether this appeal is moot. We assume without deciding it is not and address the merits.

4

the same, dirty clothes. Jacob frequently "[has] his clothes everywhere in [his] room[,]" and, until staff repeatedly intervenes, Jacob will "put[] the dirty clothes in [his] drawers instead of in his hamper."

¶11 Smothers testified that when Jacob goes for walks he will "go find little [cigarette] butts on the ground and get lights[,]" despite his doctor's orders not to use nicotine products. When asked how much of a focus seeking cigarette butts is for Jacob, Smothers responded Jacob is focused on cigarettes "all day everyday … [t]hat's all the think[s] about and talk[s] about." She explained that the reason for Jacob's difficulty with focusing appropriately is his frequent and persistent auditory hallucinations, during which he will "hear people talking to him from the walls" who are "out to get him."

¶12 Smothers testified that when Jacob "want[s] to cook something," staff is "right there to assist him with it … making sure … he doesn't burn hi[m]self." She expressed concern that Jacob cooking "with fire or heat" unsupervised might be dangerous because his focus could be disturbed by his auditory hallucinations. McCormick, the County's adult protective services investigator, expressed a similar concern that Jacob's "internal[] preoccup[ation] with those voices … would be a danger if he were in the home cooking food, walking away from that food leaving it to burn." Additionally, McCormick expressed concern "about [Jacob's] ability to take his medication independently."

¶13 This court does not agree with Jacob's assertion that the testimony provided during the due process hearing constituted mere speculation insufficient to establish substantial risk of serious harm. Jacob seems to suggest, for example, that because "no witness testified that Jacob had ever endangered himself or others while cooking[,]" the County's assertion that Jacob could harm himself or others

by cooking unsupervised is completely unsupported by the record.  However, it cannot be that the County can only prove a risk of future harm by reference to incidences of previous harm that directly mirror the specific harm anticipated.  This understanding of the risk of harm element is unsupported by law, and its application would eliminate the County's ability to prevent harms before they occur.  The circuit court did not err.

¶14     To prove a substantial risk of serious harm, the County need only demonstrate "[t]he harm envisioned … [is] directly foreseeable from the overt acts or omission of the individual."  **K.N.K. v. Buhler**, 139 Wis. 2d 190, 202, 407 N.W.2d 281 (1987).  The totality of the testimony from both Smothers and McCormick demonstrated that Jacob suffers from frequent and persistent auditory hallucinations that tend to break his focus and that significant "acts" and "omissions" flow from these disturbances.[5]  Because of these hallucinations, staff takes care to directly supervise Jacob whenever he is engaged in an activity that could pose a risk of harm if Jacob were to become unfocused or distracted.  It is not "mere speculation" to conclude that there is a substantial risk Jacob could experience a disorienting or otherwise distracting hallucination while crossing a street, cooking a meal, or while independently managing his medications, and that doing so could result in serious harm to himself or others.  For the foregoing reasons, the circuit court did not err when it concluded the County proved the statutory elements by clear and convincing evidence.

---

[5] McCormick testified that, when she interviewed Jacob, he "had a hard time even maintaining conversation and would *stop mid-sentence, turn his head as if listening to something else, and then shake his head* and … start talking to me again."  (Emphasis added).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.